[No. S017642. August 30, 1991.]

JAVIER VALLE IZAZAGA, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

358

362

---

**COUNSEL**

Neal Pereira, Public Defender, Tim Bazar, Assistant Public Defender, and Hugo Loza, Deputy Public Defender, for Petitioner.

Norwood Nedom, Michael E. Cantrall, Linda F. Robertson, Thomas Havlena, Kevin J. Phillips, Wilbur Littlefield, Public Defender (Los Angeles), Laurence M. Sarnoff and Albert J. Menaster, Deputy Public Defenders, Jay B. Gaskill, Public Defender (Alameda), and Harold G. Friedman, Assistant Public Defender, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Arnold O. Overoye and John H. Sugiyama, Assistant Attorneys General, Michael J. Weinberger and David D. Salmon, Deputy Attorneys General, for Real Party in Interest.

Edwin L. Miller, Jr., District Attorney (San Diego), Thomas F. McArdle, Deputy District Attorney, and Kent S. Scheidegger as Amici Curiae on behalf of Real Party In Interest.

## OPINION

**LUCAS, C. J.**—In this case we resolve several issues presented by the adoption on June 5, 1990, of an initiative measure designated on the ballot as Proposition 115 and entitled the "Crime Victims Justice Reform Act." Petitioner raises various challenges under the federal and state Constitutions to the provisions of the measure authorizing *reciprocal discovery* in criminal cases. (See also *Raven v. Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077] [*Raven*; single-subject and revision challenges to Prop. 115]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434] [challenge to retroactive application of Prop. 115].)

We conclude that, properly construed and applied, the discovery provisions of Proposition 115 are valid under the state and federal Constitutions, and that Proposition 115 effectively reopened the two-way street of reciprocal discovery in criminal cases in California.

### I. FACTS

Petitioner was charged with two counts of forcible rape (Pen. Code, former § 261, subd. (2)), one count of kidnapping (Pen. Code, § 207), and numerous enhancement allegations. The acts were alleged to have occurred on June 18, 1990. The People served on petitioner an informal request for

discovery pursuant to newly adopted Penal Code section 1054.5, subdivision (b) (section 1054.5(b)). After petitioner refused the informal discovery request, the People filed a formal motion for discovery in superior court, to which petitioner filed an opposition. Following a hearing, the court granted the motion and issued an order requiring discovery.[1]

The Court of Appeal summarily denied petitioner's application for a writ of mandate or prohibition. We stayed the discovery order and issued an alternative writ of mandate to consider the important constitutional and interpretive questions presented. Petitioner raises several arguments regarding the constitutionality of the discovery provisions added by Proposition 115. Before we consider these contentions, we first review these new discovery provisions.

## II. CONSTITUTIONAL AND STATUTORY PROVISIONS

Proposition 115 added both constitutional and statutory language authorizing reciprocal discovery in criminal cases. Section 30, subdivision (c), added to article I of the California Constitution (article I, section 30(c)) by Proposition 115, declares discovery to be "reciprocal" in criminal cases. ("In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the People through the initiative process.")

Proposition 115 also added a new Penal Code chapter on discovery. (Pen. Code, § 1054 et seq. [hereafter, the new discovery chapter].) The new Penal Code sections relevant to the issues that arise in this case are section 1054 (providing for interpretation of the chapter to give effect to certain specified purposes), section 1054.1 (providing for defense discovery), section 1054.3 (providing for prosecutorial discovery), section 1054.5 (providing mechanism for compelled discovery), section 1054.6 (providing that discovery shall not be required of work product or otherwise privileged information and material), and section 1054.7 (requiring disclosure at least 30 days prior to trial, placing a continuing duty to disclose on both prosecution and

---

[1] The court's order required that petitioner disclose to the People the following: "(1) The names and addresses of persons, other than the Defendant, counsel or Defendant intends to call at trial. [¶] (2) Any relevant written or recorded statements of the persons in #1 above and/or reports of the statements of such persons. [¶] (3) Any reports or statements of experts made in connection with this case, including, but not limited to, the results of physical or mental examinations, scientific tests, experiments, or comparisons which the Defendant or counsel intend to offer as evidence at the trial of this case. [¶] (4) Any 'real,' i.e. tangible or physical, evidence which the Defendant or counsel intend to offer in evidence at trial." This order required that petitioner disclose all the information that he could be compelled to disclose pursuant to new Penal Code section 1054.3 (section 1054.3). (See, *post*, p. 365, fn. 3.)

defense, and providing for denial of disclosure on a showing of "good cause").[2]

Proposition 115 also repealed several discovery provisions, including Penal Code former section 1102.5 (previously declared unconstitutional in *In re Misener* (1985) 38 Cal.3d 543 [213 Cal.Rptr. 569, 698 P.2d 637] [*Misener*], discussed below), and Penal Code former section 1430 (requiring prosecutor to furnish defendant with police and arrest reports). Furthermore, Proposition 115 repealed the provisions in Penal Code section 859 requiring prosecutors to furnish defendants with police and arrest reports.

## III. Discussion

### A. *Privilege Against Self-incrimination*

Petitioner asserts application of the discovery provisions enacted by Proposition 115 would violate his state and federal constitutional privileges against compelled self- incrimination. We disagree.

1. *Federal Constitutional Challenge.* The Fifth Amendment of the United States Constitution recites in pertinent part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." Petitioner asserts that the new discovery chapter enacted by Proposition 115 compels a criminal defendant to be a witness against oneself in violation of the foregoing self-incrimination clause.

First, petitioner argues that the requirement under section 1054.3[3] that the defense must disclose to the prosecution the names and addresses of *all* witnesses it intends to call at trial, rather than merely its alibi witnesses, violates the self-incrimination clause. Decisions of the Supreme Court compel a contrary conclusion.

In *Williams v. Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893] (*Williams*), the high court upheld against a self-incrimination clause chal-

---

[2]The new discovery chapter of the Penal Code also includes section 1054.2 (prohibiting disclosure to defendant, but not to defense counsel, of address and telephone number of victims and prosecution witnesses) and section 1054.4 (providing that the chapter does not limit law enforcement from lawfully gathering nontestimonial evidence).

[3]Section 1054.3 provides that "The defendant and his or her attorney shall disclose to the prosecuting attorney: [¶] (a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial. [¶] (b) Any real evidence which the defendant intends to offer in evidence at the trial."

lenge Florida's "notice-of-alibi" rule, which required a criminal defendant intending to rely on an alibi defense to notify the prosecution of the place where the defendant claimed to be at the time in question, and of the names and addresses of the witnesses the defendant intended to call in support of the alibi. Petitioner, noting that section 1054.3 is not limited to situations involving an alibi defense, attempts to distinguish *Williams* and argues that the self-incrimination clause prohibits the compelled discovery of defense witnesses in the absence of an alibi defense and the special problems it presents. As support for this argument petitioner cites the language in *Williams* that, "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." (*Id.* at p. 81 [26 L.Ed.2d at p. 450].)

Petitioner's argument is misguided. The language in *Williams* on which he relies relates to the due process and fair trial issues addressed in that case, and is not relevant to the Fifth Amendment analysis. Moreover, petitioner's argument misinterprets the scope of the self-incrimination clause, which "protects a person only against being *incriminated by his own compelled testimonial communications.*" (*Fisher* v. *United States* (1976) 425 U.S. 391, 409 [48 L.Ed.2d 39, 55, 96 S.Ct. 1569], italics added.) Under cases of the Supreme Court, there are four requirements that together trigger this privilege: the information sought must be (i) "incriminating"; (ii) "personal to the defendant"; (iii) obtained by "compulsion"; and (iv) "testimonial or communicative in nature." (See *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160] [*Nobles*]; *Schmerber* v. *California* (1966) 384 U.S. 757, 761 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826]; *Doe* v. *United States* (1988) 487 U.S. 201, 207 [101 L.Ed.2d 184, 194-195, 108 S.Ct. 2341].)[4]

Statutorily mandated discovery of evidence that meets these four requirements is prohibited. Conversely, discovery of evidence that does not meet *each* of these requirements is not barred by the self-incrimination clause. (See *Schmerber* v. *California, supra,* 384 U.S. 757, 761 [16 L.Ed.2d 908, 914].) This is so even in the absence of special state interests such as protection against easily fabricated "eleventh hour" defenses. The absence of particular state interests in disclosure affects none of these four requirements, and thus cannot itself trigger the self-incrimination clause. (See *New Jersey* v. *Portash* (1979) 440 U.S. 450, 459 [59 L.Ed.2d 501, 510, 99 S.Ct. 1292].)

In *Williams, supra,* 399 U.S. 78, the high court held that discovery of the names and addresses of a defendant's alibi witnesses is not "compelled" self-incrimination, and therefore does not violate the Fifth Amendment. (*Id.*

---

[4]These four requirements emanate directly from the wording of the self-incrimination clause: "No person . . . shall be *compelled* in any criminal case to be a *witness against himself* . . . ." (Italics added.)

at p. 85 [26 L.Ed.2d at p. 452].) The court reasoned, "At most, the rule only compelled [defendant] to *accelerate the timing* of his disclosure, by forcing him to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial." (*Ibid.* [26 L.Ed.2d at p. 452], italics added.) Thus, discovery of the names and addresses of the witnesses that the defense intends to call at trial, *whether or not in support of an alibi defense,* merely forces the defendant "to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial." (*Ibid.* [26 L.Ed.2d at p. 452].) Under the rationale of *Williams,* such discovery does not constitute *compelled* self-incrimination, and therefore does not implicate the privilege.[5]

We thus address petitioner's second contention, that insofar as section 1054.3 requires the defense to disclose before trial any *statements* of the witnesses it intends to call at trial, that section violates the self-incrimination clause. Once again, decisions of the Supreme Court compel a contrary conclusion.

Compelled disclosure of the statements of defense witnesses does not meet all of the requirements necessary to implicate the self-incrimination clause. We agree with petitioner that the acceleration doctrine of *Williams* discussed above is not dispositive here, for it is not a matter of merely forcing the defendant "to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial." (*Williams, supra,* 399 U.S. 78, 85 [26 L.Ed.2d 446, 452].) Some *statements* of witnesses the defense intends to call might never be offered at trial by the defense. Thus, to the extent that the statements are incriminating, such incrimination *is* indeed compelled. And clearly such statements are "testimonial or communicative in nature." (See *Schmerber* v. *California, supra,* 384 U.S. 757, 761 [16 L.Ed.2d 908, 914].) Such statements are *not,* however, "personal to the defendant."

---

[5]In rejecting our analysis here, Justice Broussard's dissent relies on *Brooks* v. *Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891] [*Brooks*; holding rule requiring defendant to testify before other defense witnesses, or not at all, violative of accused's constitutional right to remain silent], and *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] [*Griffin*; holding prosecutorial comment on defendant's failure to testify a violation of defendant's rights under Fifth Amendment], for the proposition that the "accelerated disclosure" under section 1054.3 violates the self-incrimination clause. (See dis. opn. by Broussard, J., *post,* pp. 403-404.) These cases, dealing with the special component of the Fifth Amendment protecting an accused's choice of whether or not to testify, are inapposite to the situation we face here. The new discovery chapter does not affect, directly or indirectly, defendant's decision to take the stand. Section 1054.3 applies only to witnesses *"other than the defendant."* Justice Broussard's reliance on *Brooks* and *Griffin* is therefore misplaced. We also note that the language Justice Broussard quotes from *Estelle* v. *Smith* (1981) 451 U.S. 454, 462 [68 L.Ed.2d 359, 368, 101 S.Ct. 1866], eloquently supports our analysis: "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of *forcing it from his own lips.*' " (See dis. opn. by Broussard, J., *post,* p. 405, italics omitted and added.)

■ As the high court stated in *Nobles, supra,* 422 U.S. 225, the privilege against self-incrimination " 'is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him.' " (*Id.* at p. 233 [45 L.Ed.2d at pp. 150-151], quoting *Couch* v. *United States* (1973) 409 U.S. 322, 327 [34 L.Ed.2d 548, 553-554, 93 S.Ct. 611], italics in original.) In *Nobles,* the court rejected a self-incrimination challenge to a trial court order requiring the defense to disclose its investigator's report of statements made by prosecutorial witnesses once the defense called its investigator as a trial witness.

In *Nobles* the high court reasoned: "The fact that these statements of third parties were elicited by a defense investigator on [defendant's] behalf does not convert them into [defendant's] personal communications. Requiring their production from the investigator therefore would not in any sense compel [defendant] to be a witness against himself or extort communications from him." (*Nobles, supra,* 422 U.S. 225, 234 [45 L.Ed.2d 141, 151].) The court concluded, "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." (*Ibid.* [45 L.Ed.2d 141, 151].)

The high court's reasoning in *Nobles* is controlling here. Section 1054.3 requires disclosure by the defense of statements, and reports of statements, of "persons, *other than defendant,*" that the defense intends to call as witnesses at trial. ■ Thus, the compelled statements are those of "third parties" within the meaning of *Nobles* and are therefore outside of the scope of the self-incrimination clause. (*Nobles, supra,* 422 U.S. 225, 234 [45 L.Ed.2d 141, 151].)[6]

Petitioner attempts to distinguish *Nobles,* noting that the Supreme Court has never upheld disclosure of statements of defense witnesses *before* trial.[7] He further observes that the Federal Rules of Criminal Procedure provide for disclosure of statements of defense witnesses only *after* they testify at trial, citing rule 26 of the Federal Rules of Criminal Procedure (18 U.S.C.).

Here again petitioner's argument misinterprets the scope of the self-incrimination clause. The timing of the disclosure, whether before or during

---

[6]We note that the high court's holding in *Nobles* that statements of such third persons are outside the scope of the self-incrimination clause is no less applicable to the statements of defense witnesses than it is to the statements of prosecution witnesses in the hands of the defense, as was the situation in *Nobles.* In either case, such statements are of "third parties [to be] called as witnesses at trial," rather than defendant's "personal communications." (*Nobles, supra,* 422 U.S. 225, 234 [45 L.Ed.2d 141, 151].)

[7]As support for his reading of *Nobles,* petitioner cites *Middleton* v. *United States* (D.C. 1979) 401 A.2d 109; *United States* v. *Felt* (D.D.C. 1980) 502 F.Supp. 71; and *United States* v. *Layton* (N.D.Cal. 1981) 90 F.R.D. 520. Petitioner misreads these cases, none of which interprets the self-incrimination clause analysis of *Nobles.*

trial, does not affect any of the four requirements that together trigger the privilege against self-incrimination, and therefore cannot implicate the privilege. The acceleration doctrine of *Williams, supra,* 399 U.S. 78, compels this conclusion. We conclude that statements of the witnesses that the defense intends to call at trial are not *personal to the defendant,* and therefore compelled discovery of such statements does not implicate the self-incrimination clause.[8]

Having concluded that application of the discovery provisions enacted by Proposition 115 does not violate petitioner's Fifth Amendment privilege against self-incrimination, we turn now to the privilege under the state Constitution.

2. *State Constitutional Challenge.* Section 15 of article I of the California Constitution (hereafter article I, section 15) guarantees the defendant in a criminal case certain procedural rights, including the right not to be compelled to testify against oneself. This court relied on that provision in *Misener, supra,* 38 Cal.3d 543, to invalidate former Penal Code section 1102.5, which permitted the prosecution to discover from the defendant, following testimony on direct examination of defense witnesses other than the defendant, prior statements made by those witnesses. Petitioner asserts the new discovery chapter is unconstitutional under our decisions in *Misener* and other cases interpreting the state constitutional privilege against self-incrimination.

*Misener, supra,* 38 Cal.3d 543, was preceded by a long line of decisions of this court on the subject of prosecutorial discovery, beginning with *Jones v. Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213] (*Jones*; holding that pretrial discovery by prosecution of identities and written reports of expert witnesses defendant intends to call at trial does not violate state self-incrimination clause or attorney-client privilege). It is appropriate that our analysis of the state Constitution begin with the observation of then-Justice Traynor in *Jones* that "absent the privilege against self-incrimination or other privileges provided by law, the defendant in a criminal case has no valid interest in denying the prosecution access to evidence that can throw light on issues in the case." (*Jones, supra,* 58 Cal.2d at p. 59.) In *Jones* the court concluded that discovery, functioning so as to

---

[8] In determining whether the compelled discovery of statements of defense witnesses implicates the self-incrimination clause, we have thus far focused on the materials actually disclosed. We also note, however, that *the act of handing over* the statements of defense witnesses to the prosecutor does not implicate the privilege. This act is not "testimonial or communicative in nature" because the act itself does not "reveal, directly or indirectly, [defendant's] *knowledge* of facts relating him to the offense or . . . [require defendant] to share *his thoughts* and beliefs with the Government." (*Doe v. United States, supra,* 487 U.S. 201, 213 [101 L.Ed.2d 184, 199], italics added.)

promote "the orderly ascertainment of truth," "should not be a one-way street." (*Id.* at p. 60.)

The two-way street envisioned by then-Justice Traynor in *Jones* was short lived as the road to prosecutorial discovery was effectively closed in *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673] (*Prudhomme*). In *Prudhomme*, we reasoned that "certain significant developments in the law since *Jones*," including a decision of the Supreme Court applying the Fifth Amendment privilege against self-incrimination to the states (*Malloy* v. *Hogan* (1964) 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489]), and the high court's "increasing emphasis upon the role played by" that privilege, were cause to reexamine the policies underlying prosecutorial discovery. (*Prudhomme, supra,* 2 Cal.3d at p. 323.) *Prudhomme,* essentially limiting *Jones* to its facts, reasoned that the focus must be whether the compelled discovery "conceivably might lighten the prosecution's burden of proving its case in chief" and held that the privilege "forbids compelled disclosures which could serve as a 'link in a chain' of evidence tending to establish guilt of a criminal offense." (*Id.* at p. 326.) Accordingly, *Prudhomme* annulled a discovery order that would have required the defendant to disclose to the prosecution the names, addresses and expected testimony of all witnesses he intended to call at trial. (*Id.* at p. 328.)

The federal trend that we perceived in *Prudhomme, supra,* 2 Cal.3d 320, was abruptly terminated two months later by the high court's decision in *Williams, supra,* 399 U.S. 78, upholding Florida's notice-of-alibi rule against a Fifth Amendment self-incrimination challenge. Thereafter, in a case addressing the validity of a nonstatutory discovery order requiring the defense to disclose to the prosecution the names and addresses of the witnesses it would call, we retained the *Prudhomme* rule, resting it on the privilege against self-incrimination contained in the *California* Constitution. (*Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45] [*Reynolds*].) We stated in *Reynolds*, "it cannot be gainsaid that *Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires." (*Id.* at p. 843; see also *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 524-526 [134 Cal.Rptr. 774, 557 P.2d 65] [invalidating court order requiring disclosure by defendant of prospective witnesses, so jurors could ascertain whether they were acquainted with them, as violative of state privilege against self-incrimination in absence of finding that such disclosure could not possibly tend to incriminate defendant or lessen prosecution's burden of proof].)

Any possibility that the state privilege against self-incrimination would nonetheless permit some form of prosecutorial discovery was eliminated in

*Misener, supra,* 38 Cal.3d 543, in which we struck down the Legislature's attempt to fashion a reciprocal discovery statute, reasoning that to the extent a compelled disclosure is useful to the prosecution's case, it violates the defendant's *state* constitutional privilege against self-incrimination.

The foregoing cases represented the state of the law facing the voters in June 1990 when they voted to amend the California Constitution. As discussed above, Proposition 115 added article I, section 30(c) to the California Constitution, providing that "discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." The concept of "reciprocal" discovery mandated by article I, section 30(c) is inherently inconsistent with the roadblock to prosecutorial discovery created by our earlier interpretations of the state constitutional privilege against self-incrimination as developed in the *Prudhomme* line of cases. Thus, in resolving this inconsistency we must apply principles of constitutional interpretation.

█ Rudimentary principles of construction dictate that when constitutional provisions can reasonably be construed so as to avoid conflict, such a construction should be adopted. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; see also *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) As a means of avoiding conflict, a recent, specific provision is deemed to carve out an exception to and thereby limit an older, general provision. (See, e.g., *People* v. *Valentine* (1986) 42 Cal.3d 170, 181 [228 Cal.Rptr. 25, 720 P.2d 913]; *Serrano* v. *Priest, supra,* 5 Cal.3d at p. 596; *People* v. *Western Airlines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723].) █ Therefore, to the extent that the *Prudhomme* line of cases impeded reciprocal discovery, article I, section 30(c) must be seen as abrogating those cases, and limiting the scope of the state constitutional privilege against self-incrimination as it relates to reciprocal discovery. (See *People* v. *Valentine, supra,* 42 Cal.3d at p. 181.)[9] Article I, section 30(c) constitutes a specific exception to the broad

---

[9]In dissent, Justice Mosk incorrectly argues our interpretation of article I, section 30(c) as removing the *Prudhomme* roadblock renders article I, section 30(c) redundant to section 3 of Proposition 115 ("[T]he rights of a defendant . . . to due process of law . . . [and] to not be compelled to be a witness against himself or herself . . . shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. . . ."), invalidated by our decision in *Raven, supra,* 52 Cal.3d 336. (See dis. opn. by Mosk, J., *post,* p. 399.) Although overlapping to some extent, the two provisions are by no means entirely redundant. Section 3 of Proposition 115 clearly was written much more broadly than the narrowly tailored amendment of the state Constitution effected by the addition of article I, section 30(c). More important, article I, section 30(c) does what section 3 of Proposition 115 never intended to do: it provides *the people of the state of California with a right to reciprocal*

privilege against self-incrimination set forth in article I, section 15 of the California Constitution. (*Ibid.*)

Such an interpretation gives effect to the intent of the voters in passing Proposition 115. ██ The manifest intent behind the measure was to reopen the two-way street of reciprocal discovery. The preamble to Proposition 115 states that "comprehensive reforms are needed *to restore balance and fairness to our criminal justice system.*" (Prop. 115, § 1(a), italics added.) In order to accomplish this goal, the voters intended to remove the roadblock to prosecutorial discovery created by our interpretations of the state constitutional privilege against self-incrimination as developed in the *Prudhomme* line of cases. The preamble further states, "In order to address these concerns and to accomplish these goals, we the people further find that it is necessary to reform the law as developed in numerous California Supreme Court decisions . . . ." (Prop. 115, § 1(b).)

██ We note the California Constitution continues to afford criminal defendants an independent source of protection from infringement of certain rights, including the privilege against self-incrimination. (See *Raven, supra,* 52 Cal.3d 336 [invalidating Prop. 115 to extent it would have required interpretation of state constitutional privilege against self-incrimination, and other rights of criminal defendants, consistently with analogous rights in federal Constitution].) These general rights of criminal defendants, however, are necessarily limited to the extent they are inconsistent with article I, section 30(c), pertaining to reciprocal discovery. (See *People* v. *Valentine, supra,* 42 Cal.3d at p. 181.) Thus, petitioner's reliance on the state constitutional privilege against self-incrimination as a restriction on reciprocal discovery is unavailing.

### B. *Right to Due Process of Law*

Petitioner asserts the new discovery chapter violates his right to due process of the law under the Fourteenth Amendment of the United States Constitution. We disagree. The Fourteenth Amendment recites in pertinent part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

1. *Reciprocity Challenge.* ██ The foregoing due process clause has little to say about the amount of discovery which must be afforded the parties in a criminal prosecution. (*Wardius* v. *Oregon, supra,* 412 U.S. 470, 474 [37 L.Ed.2d 82, 87] [*Wardius*]; but cf. *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] [*Brady*; prosecutor has obligation to disclose exculpatory evidence].) The due process clause, however, "does

*discovery in criminal cases* to parallel the federal constitutional right of criminal defendants under *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208].

speak to the *balance of forces* between the accused and his accuser." (*Wardius, supra,* at p. 474 [37 L.Ed.2d at p. 87], italics added.) That is, when the prosecution is allowed discovery of the defense, that discovery must be reciprocal. (*Ibid.* [37 L.Ed.2d at p. 87.].) In *Wardius* the Supreme Court held that under the due process clause, a criminal defendant cannot be compelled by discovery procedures to reveal his alibi defense in the absence of fair notice that he would have the opportunity to discover the prosecution's rebuttal witnesses.

■ Petitioner asserts the new discovery chapter fails on its face to provide for reciprocal discovery as required by the due process clause. Properly construed, we conclude that the new discovery chapter affords defendants sufficient rights of reciprocal discovery to meet the requirements of the due process clause. At the outset we note that, for two reasons, our interpretation of the statutory scheme should favor an implicit requirement of reciprocity.

First, article I, section 30(c), the new constitutional provision enacted contemporaneously with the new discovery chapter, expressly provides that "discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the People through the initiative process." It follows that the voters, in requiring that any initiative prescribing that discovery in criminal cases be "reciprocal in nature," would naturally intend that their contemporaneous enactment of a discovery scheme for criminal cases would in fact provide for such reciprocity.

Second, turning to the statutory enactment itself, Penal Code section 1054 (section 1054) expressly provides that the entire new discovery chapter "shall be interpreted to give effect to all of the following purposes," including the provision that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, *or as mandated by the Constitution of the United States.*" (§ 1054, subd. (e), italics added.) Given that the due process clause mandates reciprocity when the prosecution obtains discovery materials from the defense (*Wardius, supra,* 412 U.S. 470), and given that the new discovery chapter provides for prosecutorial discovery of defense evidence (see Pen. Code, § 1054.1 [section 1054.1]),[10] it follows that the new discovery chapter should, if possible, be interpreted as providing such reciprocity.

---

[10]Section 1054.1 provides, "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the

With this in mind, we review the new discovery chapter to determine whether, explicitly or implicitly, it meets the requirement of reciprocity under the due process clause. Comparing the obligations of the defense under section 1054.3 (see, *ante*, p. 365, fn. 3) with those of the prosecutor under section 1054.1 (see, *ante*, p. 373, fn. 10), it is clear that the two provisions closely track each other, with any imbalance favoring the defendant as required by reciprocity under the due process clause. (See *Wardius, supra,* 412 U.S. 470, 475, fn. 9 [37 L.Ed.2d 82, 88] ["If there is to be any imbalance in discovery rights, it should work in the defendant's favor."].)

Both the prosecution and the defense must disclose the identities and addresses of all persons they intend to call as witnesses at trial, although the defense need not disclose whether the defendant will testify. Any relevant written or recorded statements of such witnesses, or reports of the statements of such witnesses, must also be disclosed. And while the prosecution must disclose all "relevant real evidence seized or obtained as part of the investigation," the defense need disclose only that real evidence it intends to offer at trial. Moreover, the provisions relating to the timing of disclosure and the mechanics of enforcement apply evenhandedly to both the prosecution and the defense. In reviewing these new provisions, it is clear that the scheme is "carefully hedged with reciprocal duties requiring state disclosure to the defendant." (*Williams, supra,* 399 U.S. 78, 81 [26 L.Ed.2d 446, 450].) Petitioner nonetheless makes several arguments asserting insufficiency or lack of reciprocity in the new discovery chapter, which we address in turn.

■ First, petitioner claims the new discovery chapter is inadequate because under it, following a compelled disclosure by the defense, the prosecution is not *compelled* to reciprocate; rather, discovery of the prosecution is required only "upon demand" by the defendant. Petitioner appears to argue that once a discovery of the defense is compelled, discovery of the prosecution should be automatic. We disagree.

Section 1054.5(b) provides that before either party may seek court enforcement of any disclosure required by the new discovery scheme, the party must first make an informal request to the other party for the information. Given that the prosecution must also obtain discovery of the defense through the mechanism of section 1054.5(b), the due process clause is not violated by requiring the defendant to use the same mechanism to effectuate his or her reciprocal discovery rights. The scheme is reciprocal in that the same enforcement mechanism is used by both the prosecution and the defense.

---

outcome of the trial. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

The high court in *Wardius, supra,* 412 U.S. 470, held that the due process clause requires "notice that [the defendant] would have an opportunity to discover the State's rebuttal witnesses." (*Id.* at p. 479 [37 L.Ed.2d at p. 90].) Section 1054.5(b) provides a defendant with notice of such an opportunity.

▄▄▄ Second, petitioner asserts the new discovery chapter is insufficient because following a compelled disclosure of a defendant's witnesses, there is no duty on the part of the prosecutor to disclose to the defense the prosecution's *rebuttal* witnesses, as required by *Wardius, supra,* 412 U.S. 470. Petitioner notes that the prosecutor must disclose only those witnesses he or she "intends" to call at trial, and argues that prosecutors can take the position that disclosure of rebuttal witnesses is not required because their intent to call any such witnesses is dependent on whom the defense calls and the testimony of the defense witnesses. We find no constitutional infirmity.

The due process clause requires notice that the defendant will have the opportunity to discover the prosecutor's rebuttal witnesses. (*Wardius, supra,* 412 U.S. 470, 479 [37 L.Ed.2d 82, 90].) Before addressing petitioner's argument, we note that the enumeration of a criminal defendant's discovery rights under section 1054.1 does not *specify* that rebuttal witnesses are included. However, the only reasonable interpretation of the requirement that the prosecution disclose "[t]he names and addresses of persons the prosecutor intends to call as witnesses at trial" is that this section includes both witnesses in the prosecution's case-in-chief and rebuttal witnesses that the prosecution intends to call. The phrase "at trial" means exactly that—at the trial, not merely during the prosecution's case-in-chief. A like provision of Ohio's discovery scheme was similarly interpreted by the Ohio Supreme Court, which held the requirement that the prosecution disclose the witnesses it "intends to call at trial" includes "all witnesses it reasonably anticipates it is likely to call, *whether in its case-in-chief or in rebuttal.*" (*State* v. *Howard* (1978) 56 Ohio St.2d 328 [100 Ohio Op.3d 448, 383 N.E.2d 912, 915], italics added.)

Addressing petitioner's argument, we begin with the observation that the prosecution's right to discover defendant's witnesses under section 1054.3 is triggered by the *intent* of the defense to call that witness. Thus, the disclosure by the defense of its witnesses under section 1054.3 signals to the prosecution that the defense "intends" to call those witnesses at trial. It follows that the prosecution must necessarily "intend" to call any of its witnesses who will be used in refutation of the defense witnesses if called. A prosecutor cannot "sandbag" the defense by compelling disclosure of witnesses the defense intends to call, and then in effect redefining the meaning of "intends" when it comes time to disclose rebuttal witnesses. ▄▄▄▄▄▄▄ The same definition applies to both the prosecution

and the defense and thereby assures reciprocity.[11] A disclosure of witnesses under section 1054.3 thus triggers a defendant's right to discover rebuttal witnesses under section 1054.1, fulfilling the requirement of reciprocity under *Wardius, supra,* 412 U.S. 470.

 Third, petitioner claims that reciprocity under the due process clause requires that the prosecution disclose not only its rebuttal witnesses (and their recorded statements or reports of their statements), but also all other evidence it intends to use to refute the evidence disclosed by the defense, and that the new discovery chapter fails to require such reciprocity.[12] We agree with petitioner that under the new discovery chapter the prosecutor need not disclose any evidence not otherwise discoverable by the defense under section 1054.1. We conclude, however, that the due process clause does not require such disclosure.

In *Williams, supra,* 399 U.S. 78, the high court held a discovery rule under which the prosecution is not required to disclose its evidence in refutation of the alibi evidence disclosed by the defense (other than its rebuttal witnesses and their statements) does not violate the due process requirement of reciprocity (*Id.* at pp. 81-82 [26 L.Ed.2d at pp. 449-450].) The high court concluded that Florida's rule, requiring the prosecution to disclose the witnesses it proposes to offer to rebut the alibi defense in exchange for the defendant's disclosure of alibi witnesses, met the due process requirement of reciprocity. (*Ibid.* [26 L.Ed.2d at p. 450].)

We recognize that general language in the *Wardius* opinion gives some support to petitioner's argument: "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to a hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (*Wardius, supra,* 412 U.S. 470, 476 [37 L.Ed.2d 82, 88].) Although this language could be read to require disclosure of *all* evidence in the possession of the prosecutor that will be used to refute the defendant's alibi, this is an incorrect interpretation of the *Wardius* opinion and the due process clause.

We stated in *Reynolds, supra,* 12 Cal.3d 834, that under *Wardius* the federal constitutional requirement of reciprocity requires disclosure *only of*

---

[11]The Ohio Supreme Court defined the requirement that the prosecution disclose the witnesses it "intends to call at trial" as including "all witnesses it reasonably anticipates it is likely to call. . . ." (*State* v. *Howard, supra,* 383 N.E.2d 912, 915.) We adopt this definition for purposes of interpreting the requirements of the new discovery chapter.

[12]We note that on both his informal and formal motions for discovery, the district attorney included a provision stating it would voluntarily furnish defendant with "All evidence possessed or obtained by the prosecution that impeaches or corroborates defense materials . . . ." Such a voluntary promise, however, is apart from the obligations created by the new discovery chapter, and is therefore not relevant to a facial challenge of the constitutionality of the provisions enacted by Proposition 115.

*rebuttal witnesses* in response to a defendant's disclosure of an alibi defense and alibi witnesses: "Two passages in *Wardius* indicate that discovery to the defendant of *the identities of the witnesses* by which the prosecution will seek to rebut or refute an alibi defense is the sine qua non of the reciprocity constitutionally required of notice-of-alibi procedures." (*Id.* at p. 844, fn. 13, italics added.) We then quoted the two sections of *Wardius* that make this point clear.[13]

Reciprocity under the due process clause requires notice that the defendant will have the opportunity to discover the prosecutor's rebuttal witnesses (and their statements) following discovery of defense witnesses by the prosecutor. (*Wardius, supra,* 412 U.S. 470, 479 [37 L.Ed.2d 82, 90].) Reciprocity requires a fair trade, defense witnesses for prosecution witnesses, and nothing more. We glean nothing from the Supreme Court's interpretations of the due process clause to lead us to conclude that reciprocity requires the prosecutor to disclose other evidence gathered in response to a compelled defense disclosure that may be used to refute the defendant's case, when the defense is not required to do the same following discovery of the prosecution's witnesses.[14]

In summary, we conclude that the new discovery chapter enacted by Proposition 115 creates a nearly symmetrical scheme of discovery in criminal cases, with any imbalance favoring the defendant as required by reciprocity under the due process clause. (See *Wardius, supra,* 412 U.S. 470, 475, fn. 9 [37 L.Ed.2d 82, 88].)

2. *"Brady" Evidence Challenge.* Petitioner asserts the new discovery chapter violates the due process clause by failing to require the prosecutor to disclose all exculpatory evidence as mandated by the high court in *Brady, supra,* 373 U.S. 83, and its progeny. (See, e.g., *United States v. Bagley* (1985) 473 U.S. 667 [87 L.Ed.2d 481, 105 S.Ct. 3375]; *California v. Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528]; *United*

---

[13]The relevant passages in *Wardius* read: "Oregon grants no discovery rights to criminal defendants . . . . *More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense* . . . . [W]hile conceding that Oregon law fails to provide for reciprocal discovery on its face, the State contends that if petitioner had given notice of his alibi defense, *the state courts might have read the Oregon statute as requiring the State to give the petitioner the names and addresses of state witnesses used to refute the alibi defense.*" (412 U.S. at pp. 475-476 [37 L.Ed.2d at pp. 87-88], italics added.)

[14]We note the near mirror-image symmetry under California's new discovery chapter. Following disclosure of the prosecution's witnesses, on demand the defense must disclose *only the witnesses* (and their statements) it intends to call in refutation of the prosecution's case, rather than all the evidence developed by the defense in refutation. (See §§ 1054.1, 1054.3.) Thus, the defense is not required to disclose any statements it obtains from prosecution witnesses that it may use to refute the prosecution's case during cross-examination. Were this otherwise, we would be presented with a significant issue of reciprocity.

*States* v. *Agurs* (1976) 427 U.S. 97 [49 L.Ed.2d 342, 96 S.Ct. 2392]; *Giglio* v. *United States* (1972) 405 U.S. 150 [31 L.Ed.2d 104, 92 S.Ct. 763].)

 In order that a defendant may secure a fair trial as required by the due process clause, "the prosecution has a duty to disclose all substantial material evidence favorable to an accused. [Citations.] That duty exists regardless of whether there has been a request for such evidence [citation], and irrespective of whether the suppression was intentional or inadvertent." (*People* v. *Morris* (1988) 46 Cal.3d 1, 29-30 [249 Cal.Rptr. 119, 756 P.2d 843].) Petitioner asserts the prosecutor's obligation under new section 1054.1, subdivision (e) to disclose "any exculpatory evidence" to the defendant is more narrowly defined than the prosecutor's duty of disclosure under the due process clause. Petitioner's argument is misplaced.

The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. Such obligations exist whether or not the state has adopted a reciprocal discovery statute. Furthermore, if a statutory discovery scheme exists, these due process requirements operate outside such a scheme. The prosecutor is obligated to disclose such evidence *voluntarily,* whether or not the defendant makes a request for discovery.

No statute can limit the foregoing due process rights of criminal defendants, and the new discovery chapter *does not attempt to do so.* On the contrary, the new discovery chapter contemplates disclosure *outside* the statutory scheme pursuant to constitutional requirements as enunciated in *Brady, supra,* 373 U.S. 83, and its progeny. Section 1054 expressly provides that the new discovery chapter shall be interpreted to give effect to the provision that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, *or as mandated by the Constitution of the United States.*" (§ 1054, subd. (e), italics added.)[15] We conclude there is no due process violation because the new discovery chapter does not affect the defendant's constitutional right to disclosure of all exculpatory evidence in the hands of the prosecution as mandated by the high court in *Brady, supra,* 373 U.S. 83, and its progeny.

---

[15]Petitioner also asserts the new discovery chapter violates the due process clause by requiring disclosure of only that favorable evidence in the possession of the prosecutor, or known by the prosecutor to be in the possession of the investigating agencies, rather than all favorable evidence "within the control of law enforcement." (*United States* v. *Hsieh Hui Mei Chen* (9th Cir. 1985) 754 F.2d 817, 824.) This argument merely goes to the scope of the *Brady* duties of prosecutors and, as such, is also both outside, and independent of, any statutory discovery scheme.

## C. *Right to Effective Assistance of Counsel*

Petitioner asserts the new discovery chapter violates his right to effective assistance of counsel under the Sixth Amendment of the United States Constitution. We disagree. The Sixth Amendment recites in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

1. *Assistance of Counsel Challenge.* Petitioner asserts prosecutorial discovery of the statements of defense witnesses violates the foregoing right to counsel clause by chilling defense counsel's trial preparation. In petitioner's view, such discovery penalizes the defendant whose attorney is most vigilant in preparing the defense. We perceive no Sixth Amendment violation.

We first note that the Supreme Court has never struck down a discovery scheme as violative of the right to effective assistance of counsel. Furthermore, under the new discovery chapter, a criminal defendant need disclose only those witnesses (and their statements) the defendant intends to call at trial. It is logical to assume that only those witnesses defense counsel *deems helpful to the defense* will appear on a defendant's witness list. The identity of damaging witnesses that the defense does not intend to call at trial need *not* be disclosed. Thus, there is nothing in the new discovery chapter that would penalize exhaustive investigation or otherwise chill trial preparation of defense counsel such that criminal defendants would be denied the right to effective assistance of counsel under the Sixth Amendment.

Our conclusion is in line with that of the high court in *Nobles,* which rejected an argument that the court order violated the Sixth Amendment by requiring the defense, once it called its investigator as a trial witness, to disclose the investigator's report of statements made by prosecutorial witnesses. (*Nobles, supra,* 422 U.S. 225, 240, fn. 15 [45 L.Ed.2d 141, 154-155].) In *Nobles* the court stated, "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." (*Id.* at p. 241 [45 L.Ed.2d at p. 155].) Prosecutorial discovery of the statements of intended defense witnesses is a "legitimate demand" of the criminal justice system aimed at avoiding testimonial "half-truths" by promoting what then-Justice Traynor referred to as "the orderly ascertainment of the truth." (*Jones, supra,* 58 Cal.2d 56, 60.)

Petitioner attempts to distinguish *Nobles,* arguing that its rejection of the right to counsel challenge was based on a theory of waiver, i.e., the defend-

ant waived his Sixth Amendment claim by his "voluntary election to make testimonial use of [the defense] investigator's report." (*Nobles, supra,* 422 U.S. 225, 240, fn. 15 [45 L.Ed.2d 141, 154-155].) The high court, however, expressly stated that waiver was not the sole basis for rejecting the right to counsel challenge. As the court stated, "Moreover, *apart from this waiver,* we think that the concern voiced by [defendant] fails to recognize the limited and conditional nature of the court's order." (*Ibid.* [45 L.Ed.2d 141, 155], italics added.)[16] ▮▮▮ Under the new discovery chapter, discovery is *limited* to relevant statements and reports of statements of defense witnesses and *conditioned* upon the defendant's intent to call the witnesses at trial. (See *Nobles, supra,* 422 U.S. 225, 240, fn. 15 [45 L.Ed.2d 141, 154-155].) The new discovery provisions do not give the prosecution free rein over all defense files.[17]

Petitioner also attempts to distinguish *Nobles* as involving disclosure *during trial,* whereas the new discovery chapter contemplates discovery *before trial.* We discern no credible argument that would lead us to conclude the fact that discovery occurs before, rather than during, trial renders such discovery violative of the Sixth Amendment. The limited and conditional discovery authorized by the new discovery chapter is constitutionally acceptable under the reasoning of *Nobles, supra,* 422 U.S. 225, regardless of the timing of the discovery.

2. *Attorney Work Product Challenge.* ▮▮▮ Petitioner contends the provision of the new discovery chapter requiring pretrial disclosure of statements of defense witnesses implicates the Sixth Amendment by violating the work product doctrine enunciated by the high court in *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385] (*Hickman*).

---

[16]In support of his reading of *Nobles,* petitioner cites *Middleton* v. *United States, supra,* 401 A.2d 109. We are unpersuaded by *Middleton* as it makes no mention of the high court's statement that waiver was not the sole basis for rejecting the Sixth Amendment challenge. Petitioner also cites two federal cases, *United States* v. *Felt, supra,* 502 F.Supp. 71, and *United States* v. *Layton, supra,* 90 F.R.D. 520, for the same proposition. Petitioner misreads the federal cases. Neither stands for the proposition that *Nobles* was based solely on a theory of waiver or that compelled disclosure of statements of defense witnesses prior to trial denies a defendant the effective assistance of counsel guaranteed by the Sixth Amendment. Petitioner also cites dictum in *People* v. *Collie* (1981) 30 Cal.3d 43, 55 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], that if discovery of a defense investigator's report of interviews of defense witnesses is allowed, "defendant's constitutional right to assistance of counsel is *potentially threatened.*" (Italics added.) After being squarely presented with the issue, we find no threat to the effective assistance of counsel.

[17]In dissent, Justice Broussard attempts to distinguish *Nobles* by pointing out that there the trial court's discovery order was "limited" in that it only reached "*the relevant portion* of the investigator's report. . . ." (See dis. opn. by Broussard, J., *post,* p. 408, italics in original.) The distinction fails; section 1054.3 similarly limits discovery to only the "*relevant* written or recorded statements" of witnesses. (Italics added.)

Petitioner misreads *Hickman, supra,* 329 U.S. 495. The doctrine developed in *Hickman,* and applied in the context of discovery in criminal cases in *Nobles, supra,* 422 U.S. 225, is not based on the right to counsel clause; rather, it is "a form of federally created privilege" based on federal supervisory policy and federal statute. (*Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 399-401 [15 Cal.Rptr. 90, 364 P.2d 266] [*Greyhound*; *Hickman* work product privilege did not exist in California].) There is no privilege for attorney work product in the California Constitution. Because the work product doctrine is not constitutionally founded, there is no basis for a facial challenge to the constitutionality of the new discovery chapter on work product grounds.[18]

Moreover, we note the new discovery chapter expressly provides that attorney work product is *nondiscoverable.* Because there is no constitutional basis for a work product privilege, any protection in California of the work product of an attorney must be based on state common or statutory law. Section 2018 (formerly § 2016) of the Code of Civil Procedure codified the work product doctrine that developed in the common law *as to civil cases* subsequent to our decision in *Greyhound, supra,* 56 Cal.2d 355. (See *People* v. *Collie, supra,* 30 Cal.3d 43, 59.) Under that section, the work product of an attorney is nondiscoverable unless the court determines that the denial of discovery will unfairly prejudice the party seeking discovery or will result in an injustice. (Code Civ. Proc., § 2018, subd. (b).) Furthermore, any writing that reflects "an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable *under any circumstances.*" (Code Civ. Proc., § 2018, subd. (c), italics added.)

Prior to the enactment of Proposition 115, we held that the work product doctrine also applies to criminal cases. (*People* v. *Collie, supra,* 30 Cal.3d 43, 59.) The new discovery chapter recognizes this. Penal Code section 1054.6 (section 1054.6) of the new discovery chapter provides, "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of

---

[18]Justice Kennard asserts in her concurring opinion that we "leap" to this conclusion. (See conc. opn. by Kennard, J., *post,* p. 384.) To the contrary, our analysis follows our conclusion in *Greyhound, supra,* 56 Cal.2d. 355, that the *Hickman* work product doctrine is not rooted in the federal Constitution. Justice Kennard's assertion that the prosecution may use evidence gained through discovery only in rebuttal is premised on her view that in criminal cases the work product doctrine is grounded in the right to counsel clause. (See conc. opn. by Kennard, J., *post,* p. 384.) However, the only authority for this novel proposition is the assertion that the high court "strongly hinted" to this effect in *Nobles, supra,* 422 U.S. 225. If there is any such hint, it must not be so strong for we cannot find it. Moreover, we find untenable the proposition that the work product doctrine, created by the Supreme Court in a *civil* case, is in actuality founded in the right to counsel clause applicable only to *criminal* defendants.

Section 2018 of the Code of Civil Procedure . . . ." This section thus expressly provides that attorney work product is nondiscoverable.[19]

### D. *Other Issues*

 Beyond the facial challenge to the constitutionality of the new discovery chapter, petitioner speculates that disclosure of defense information will *in certain circumstances* violate the United States Constitution. However, section 1054.6 provides, "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which . . . are privileged as provided by the Constitution of the United States." Thus, the new discovery chapter appears to provide adequate limitations on the discovery requirements to protect a defendant's rights under the federal Constitution.

 Petitioner also argues that the new discovery chapter contains *no procedural means* for a defendant to raise potential constitutional issues that might bear on whether or not certain requested materials are discoverable. Petitioner correctly notes that Penal Code section 1054.7, which provides the mechanism for denial of discovery on a showing of "good cause," and which contemplates the possibility of in camera review, does not apply to a defendant's assertion that his constitutional rights would be violated by discovery.[20]

Constitutional rights of criminal defendants are self-executing and need no statutory enforcement mechanism. Just as in other areas of criminal prosecutions, a defendant may file opposition to the prosecution's (§ 1054.5(b)) motion for formal discovery and have the motion calendared for hearing before the trial court. The normal avenues of opposition to prosecutorial motions are available to defendants claiming infringement of constitutional rights. (See *City of Alhambra* v. *Superior Court* (1988) 205 Cal.App.3d 1118, 1130-1131 [252 Cal.Rptr. 789].) These procedural safeguards are adequate to protect the constitutional rights of criminal defendants.

---

[19]We note, however, that section 1054.6 expressly limits the definition of "work product" *in criminal cases* to "core" work product, that is, any writing reflecting "an attorney's impressions, conclusions, opinions, or legal research or theories." Thus, the qualified protection of certain materials under Code of Civil Procedure section 2018, subdivision (b), applicable in civil cases, is no longer available in criminal cases. The more recent statute limiting the definition of work product in criminal cases carves out an exception to the older work product rule applicable to civil and criminal cases alike. (See *Estate of Kramme* (1978) 20 Cal.3d 567 [143 Cal.Rptr. 542, 573 P.2d 1369].)

[20]Penal Code section 1054.7 limits "good cause" to "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement."

Moreover, section 1054.5(b) empowers the trial court to "make any order necessary to enforce the provisions of this chapter . . . ." Among those provisions is section 1054.6, which states unequivocally that defendants are not required "to disclose any materials or information which are . . . privileged as provided by the Constitution of the United States." Thus, under the new discovery chapter the trial court may, in its discretion, order briefing and argument on a contested issue of privilege, and conduct an in camera hearing where necessary. The procedural history in petitioner's case belies his argument to the contrary. ██ ██ After petitioner filed opposition papers raising constitutional claims, the motion was heard by the trial court prior to its decision on the discovery order.[21]

Last, petitioner contends section 3 of Proposition 115, which purports to require that interpretation of certain state constitutional rights of criminal defendants, including the rights to due process and a speedy and public trial, be consistent with analogous rights in the federal Constitution, denies him equal protection of the law because the interpretation of the People's new constitutional rights to due process and a speedy and public trial (Cal. Const., art. I, § 29) are not so limited by federal law. Our recent decision in *Raven, supra,* 52 Cal.3d 336, striking and severing section 3 of Proposition 115, and thus acknowledging the continued independent vitality of these enumerated state constitutional rights, renders this claim moot.

## IV. DISPOSITION

Because we conclude that, properly construed, the new discovery chapter enacted by Proposition 115 is, on its face, constitutionally valid under the federal and state Constitutions, the alternative writ of mandate issued by this court on February 22, 1991, is discharged, and the peremptory writ is denied. The order of the Court of Appeal is affirmed.

Panelli, J., Arabian, J., and Baxter, J., concurred.

**KENNARD, J.,** Concurring.—I concur in the result reached by the majority opinion, and I agree with most of the majority's reasoning. I disagree,

---

[21]We note that petitioner requested an ex parte in camera hearing on the basis that the self-incrimination clause would be violated by disclosing the name and address of a witness whose identity the defense learned directly from petitioner. The trial court properly rejected petitioner's request. The court has inherent discretion to conduct in camera hearings to determine objections to disclosure based on asserted privileges. (*City of Alhambra* v. *Superior Court, supra,* 205 Cal.App.3d 1118, 1130-1131.) The trial court properly reasoned that even if petitioner could make a showing in camera to this effect, the self-incrimination clause would not bar compelled discovery of the identity of the witness, given that petitioner intended to call that witness later at trial. (*Williams, supra,* 399 U.S. 78, 81-82 [26 L.Ed.2d 446, 449-450].)

however, with the majority's analysis of petitioner's contention that the discovery provisions of Proposition 115 implicate the Sixth Amendment by violating the work product doctrine. (Maj. opn., *ante,* pp. 380-381.)

In this case, which is at the pretrial stage, the trial court ordered petitioner to disclose the names, addresses, and statements of witnesses whom the defense intends to call at trial. Petitioner contends the order is illegal, because it requires his attorney to disclose matters that are protected by the work product privilege. Petitioner recognizes that in criminal cases Proposition 115 has limited California's *statutory* privilege for an attorney's work product. He argues, however, that a broader privilege is inherent in his Sixth Amendment right to counsel, and that this broader privilege has been violated by the trial court's discovery order. Petitioner relies primarily on *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385], in which the United States Supreme Court established a broad work product privilege for proceedings in federal court.

The majority correctly points out that the work product privilege created by the United States Supreme Court in *Hickman* v. *Taylor, supra,* 329 U.S. 495, is based on federal statutes and the high court's supervisory powers over the federal judiciary. From this general observation, the majority leaps to the conclusion that "the work product doctrine is not constitutionally founded . . . ." (Maj. opn., *ante,* p. 381.) But this conclusion finds no support in *Hickman* or in other decisions of the United States Supreme Court. In *Hickman,* the high court did not hold that there was *no* constitutional basis for the work product privilege. Once the court established a nonconstitutional basis for the privilege there was no need to, and the court therefore did not, determine whether the federal Constitution provided a separate basis for the attorney work product privilege.[1]

Although the United States Supreme Court has never expressly decided whether the attorney work product privilege is founded on the federal Constitution, in *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], it has strongly hinted that in criminal cases the privilege is grounded in the Sixth Amendment right to counsel. In *Nobles,* the defense attempted to attack the credibility of a prosecution witness by calling a defense investigator to testify regarding statements that the witness had

---

[1]The majority claims it "follows" this court's decision in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 399-401 [15 Cal.Rptr. 90, 364 P.2d 266], and that *Greyhound* held "that the . . . work product doctrine is not rooted in the federal Constitution." (Maj. opn., *ante,* p. 381, fn. 18.) I find no discussion of the federal Constitution in *Greyhound.* Because *Greyhound* involved a civil action, and the Sixth Amendment's right to counsel applies only in criminal cases, any discussion of the relationship between the right to counsel and the work product privilege would have been irrelevant under the facts of that case.

made to the investigator. The prosecution then sought discovery of the investigator's written report of his interview with the witness, for use in cross-examining the investigator.

Although in *Nobles* the high court ultimately found that the defense in that case had waived the work product privilege, it did so only after explaining—quoting from its decision in *Hickman* v. *Taylor, supra,* 329 U.S. 495—how the work product privilege plays an essential role in enabling attorneys to properly represent their clients' interests: " 'In performing his [or her] various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. . . . That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly . . . termed . . . as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his [or her] own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.' " (*United States* v. *Nobles, supra,* 422 U.S. at p. 237 [45 L.Ed.2d at p. 153].)

After noting that *Hickman* was a civil case, the *Nobles* court pointed out that the role of the attorney work product privilege "in assuring the proper functioning of the criminal justice system is even more vital." (*United States* v. *Nobles, supra,* 422 U.S. at p. 238 [45 L.Ed.2d at p. 153].) Finally, the court discussed the various aspects that form the essence of the privilege. At its core, the court said, are "the mental processes of the attorney." The court then observed that one of the "realities of litigation" is that attorneys often rely on investigators for assistance. (*Ibid.* [45 L.Ed.2d at p. 154].) Accordingly, the court concluded: "It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." (*Id.* at pp. 238-239 [45 L.Ed.2d at p. 154].)

By stressing the fact that the attorney work product privilege is "vital" and "necessary" to ensure that lawyers can properly represent their clients' interests, *Nobles* implies that this privilege is an integral part of a criminal defendant's Sixth Amendment right to counsel. Although the high court in *Nobles* expressly declined to delineate the scope of the privilege (*United States* v. *Nobles, supra,* 422 U.S. at p. 239 [45 L.Ed.2d at p. 154]), it implied

that reports of the statements of witnesses, whether prepared by attorneys themselves or by defense investigators, are included within the privilege. (*Id.* at pp. 237-238 [45 L.Ed.2d at pp. 153-154].) Thus, in this case, by ordering disclosure of reports of the statements of witnesses the defense intends to call, the trial court may have directed discovery of materials that fall within the protection afforded by the Sixth Amendment.

Even if the work product privilege is grounded in the right to counsel, however, the discovery ordered here may be upheld on the ground of waiver. In *United States* v. *Nobles, supra,* 422 U.S. 225, the high court held that if a defendant calls a witness to testify at trial, the defendant waives the work product privilege with regard to that witness's statements gathered by the defendant's attorney and the attorney's agents. (*Id.* at p. 239 [45 L.Ed.2d at p. 154].)

Because this case is at the pretrial stage, the defense has yet to call any witnesses. The trial court has ordered discovery of statements only of witnesses the defense *intends* to call. But despite the fact that no waiver has occurred (because the defense has not called any witnesses), I see no constitutional impediment to a rule permitting discovery to take place in advance of trial, in *anticipation* of defendant's expected waiver of the work product privilege, so that when the waiver actually occurs, the prosecution will be in a position to effectively rebut the evidence presented by the defense. If the defense provides no discovery until the time of trial, when the waiver takes place, the prosecution may not have sufficient time to undertake the investigation necessary to prepare an adequate rebuttal to the defense testimony. To address this problem, Proposition 115 appropriately allows discovery to take place before trial, in order to give the prosecution an opportunity to investigate and prepare a response. Because this discovery is limited to witnesses with regard to whom the defense intends to waive the work product privilege by calling them to testify at trial, it does not violate a defendant's Sixth Amendment rights.

In my view, however, there is a limitation on the manner in which the prosecution may use the discovery. If the discovery is justified only by the expectation that the defendant will waive the work product privilege, the prosecution should not be allowed to utilize at trial the fruits of such discovery until that waiver actually takes place. If prosecution witnesses testify in an unanticipated fashion, the defense may decide not to call its intended witnesses, and the waiver of the work product privilege thus may not occur. Therefore, it would be impermissible for the prosecution to use, as part of its case-in-chief, evidence gained through discovery of statements of potential defense witnesses.

In this case, there is no reason to believe that the prosecution will use the court-ordered discovery as part of its case-in-chief. Moreover, the trial court's discovery order was proper. As the majority correctly points out, the order does not violate defendant's rights under the California Constitution, nor does it violate his Fifth Amendment privilege against self-incrimination. Because defendant's constitutional rights have not been violated, his petition for writ of mandate should be denied. I therefore agree with the majority's holding denying the writ, although, for the reasons I have expressed, I cannot concur in the majority's analysis of petitioner's Sixth Amendment claim.

**MOSK, J.**—I dissent. As I shall explain, the statutory discovery scheme in question is invalid and therefore the challenged discovery order is unsupported as a matter of law.

I

At the June 5, 1990, Primary Election, the voters approved an initiative constitutional amendment and statute that was designated on the ballot as Proposition 115—the self-styled "Crime Victims Justice Reform Act."

Section 23 of Proposition 115 purportedly added chapter 10 to title 6 of part 2 of the Penal Code, entitled "Discovery," comprising Penal Code sections 1054 through 1054.7. Within the chapter, section 1054.1 provides for discovery by the defense[1] and section 1054.3 provides for discovery by the prosecution.[2]

---

[1]"The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:

"(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.

"(b) Statements of all defendants.

"(c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.

"(d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.

"(e) Any exculpatory evidence.

"(f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

[2]"The defendant and his or her attorney shall disclose to the prosecuting attorney:

"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of

On June 6, 1990, Proposition 115 purportedly became effective. (See Cal. Const., art. II, § 10, subd. (a) [statutory provisions]; *id.*, art. XVIII, § 4 [constitutional provisions].)

Subsequently, the People filed an information in the Tulare Superior Court against petitioner, Javier Valle Izazaga, and a codefendant. The pleading charged the pair with the commission, on June 18, 1990, of two counts of forcible rape (Pen. Code, former § 261, subd. (2)) and one count of simple kidnapping (Pen. Code, § 207, subd. (a)); it also alleged many and varied sentence enhancements.

The People made an informal request of Izazaga and his counsel for discovery pursuant to the procedural requirements of Penal Code section 1054.5, seeking all the information and material covered by Penal Code section 1054.3. Izazaga refused.

Thereupon, the People moved the superior court for an order under Penal Code section 1054.5 compelling Izazaga and his counsel to disclose the information and material they had informally requested.

Izazaga opposed the motion. He attacked the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery, as violative of the following protections granted criminal defendants by the United States Constitution: the right to due process of law under the Fourteenth Amendment; the privilege against self-incrimination of the Fifth and Fourteenth Amendments; the right to the assistance of counsel under the Sixth and Fourteenth Amendments; and the right to the equal protection of the laws under the Fourteenth Amendment. He did not attack the scheme as violative of the California Constitution, evidently because of section 3 of Proposition 115.[3]

---

experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b) Any real evidence which the defendant intends to offer in evidence at the trial."

[3]Section 3 of Proposition 115 purported to add the following text to section 24 of article I of the California Constitution: "In criminal cases the rights of a defendant to equal protection of the laws, to due process of law, to the assistance of counsel, to be personally present with counsel, to a speedy and public trial, to compel the attendance of witnesses, to confront the witnesses against him or her, to be free from unreasonable searches and seizures, to privacy, to not be compelled to be a witness against himself or herself, to not be placed twice in jeopardy for the same offense, and to not suffer the imposition of cruel or unusual punishment, shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United

The superior court conducted a hearing on the People's motion to compel. In its course, defense counsel unsuccessfully requested the court to hold certain proceedings in camera, outside the presence of the prosecutor, on the ground that all the information and material sought came directly and exclusively from Izazaga himself and hence that its compelled disclosure might violate his federal constitutional privilege against self-incrimination.

After the hearing, the superior court granted the People's motion to compel. It ordered the immediate disclosure of "(1) The names and addresses of persons, other than the Defendant, counsel or Defendant intends to call as witnesses at trial"; "(2) Any relevant written or recorded statements of the persons in #1 above and/or reports of the statements of such persons"; "(3) Any reports or statements of experts made in connection with this case, including, but not limited to, the results of physical or mental examinations, scientific tests, experiments, or comparisons which the Defendant or counsel intend[s] to offer as evidence at the trial of this case"; and "(4) Any 'real', i.e. tangible or physical, evidence which the Defendant or counsel intend[s] to offer in evidence at the trial."

Thereafter, Izazaga submitted to the Court of Appeal for the Fifth Appellate District a petition for writ of prohibition and/or mandate against the superior court with a request for a stay, seeking to restrain the court from enforcing its order compelling prosecutorial discovery. He attacked the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery, on the same federal constitutional grounds he relied on in his opposition to the People's motion to compel. The Court of Appeal summarily denied relief solely on the procedural ground that this court was the appropriate forum.

Izazaga then petitioned this court for review with a request to stay enforcement of the superior court's order compelling prosecutorial discovery pendente lite. He made the same federal constitutional attack he had made in the Court of Appeal. We stayed enforcement as prayed. Not long thereafter, we granted review. We then caused an alternative writ of mandate to issue.

In response, the People as real party in interest simultaneously submitted a return and a "Motion for Briefing and Argument of Additional Issue."

In their motion, drafted in the wake of our decision in *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 349-355 [276 Cal.Rptr. 326, 801 P.2d 1077], invalidating section 3 of Proposition 115, the People requested, in substance, that we consider the question whether the statutory discovery scheme is violative of a criminal defendant's privilege against self-incrimination under

States, nor shall it be construed to afford greater rights to minors in juvenile proceedings on criminal causes than those afforded by the Constitution of the United States."

article I, section 15, of the California Constitution. Izazaga subsequently joined in the motion. We granted the request.

In their return, the People maintain that Izazaga has not mounted a successful challenge based on the federal constitutional protections on which he has relied. They also maintain that he cannot mount a successful challenge based on any state constitutional protection, including the privilege against self-incrimination.

In a supplemental brief, Izazaga essentially makes an attack on state constitutional grounds—including the privilege against self-incrimination—parallel to the attack he had already made on federal constitutional grounds.

## II

As noted above, Izazaga has raised several claims against the validity of the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery. In my view, at least one is meritorious. As I shall show, the scheme fails muster under the privilege against self-incrimination of article I, section 15, of the California Constitution: "Persons may not . . . be compelled in a criminal cause to be a witness against themselves . . . ."

Before undertaking the analysis properly so called, I shall set out the necessary legal background.

In *Jones* v. *Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], we were presented with a petition for a writ of prohibition attacking an order compelling prosecutorial discovery.

On the day set for trial on a charge of rape, the defendant successfully moved for a continuance, stating that he had long been impotent and that he needed time to gather medical evidence in connection with certain injuries he had suffered. Subsequently, the People successfully moved for discovery of the following information and material: (1) the names and addresses of all physicians the defendant subpoenaed to testify about the injuries bearing on impotence; (2) the names and addresses of all physicians who had treated him; (3) all reports about his physical condition and the injuries bearing on impotence; and (4) all X-rays taken immediately after the injuries.

We restrained the trial court from enforcing the order compelling prosecutorial discovery as framed because it was violative of, inter alia, the state constitutional privilege against self-incrimination.

A bare majority of this court held that prosecutorial discovery is not absolutely prohibited by the privilege. Speaking through Justice—later Chief Justice—Traynor, they stated that discovery "should not be a one-way street" (58 Cal.2d at p. 60), allowing the flow of information and material from the People to the defendant but not from the defendant to the People. They also stated that discovery could be ordered pursuant to rules of procedure promulgated under this court's inherent power to provide for the orderly administration of justice, even in the absence of constitutional mandate or legislative authorization. (*Id.* at pp. 59-60.) They concluded: "Insofar as the trial court's order herein requires [defendant] to reveal the names and addresses of witnesses he intends to call and to produce reports and X-rays he intends to introduce in evidence to support his defense of impotence, it does not violate the privilege against self-crimination. . . . It simply requires [defendant] to disclose information that he will shortly reveal anyway. Such information is discoverable. The order, however, is not limited to the discovery of such information, and therefore cannot be enforced in its present form." (*Id.* at p. 62.)

In separate concurring and dissenting opinions, Justice Peters and Justice Dooling declared that prosecutorial discovery was totally barred by the state constitutional privilege against self-incrimination. In Justice Peters's words: "The 'one-way street' argument is obviously fallacious. The simple fact is that our system of criminal procedure is founded upon the principle that the ascertainment of the facts *is* a 'one-way street.' It is the constitutional right of the defendant, who is presumed to be innocent, to stand silent while the state attempts to meet its burden of proof, that is, to prove the defendant's guilt beyond a reasonable doubt. The defendant, up until now, did not have to take an active part in the ascertainment of the facts. The majority opinion does not merely enlarge a simple judicial principle of pretrial procedure, it fundamentally alters our concepts of the rights of the accused, and forces him to come forward with information before the prosecution has presented a case against him." (58 Cal.2d at pp. 64-65, italics in original (conc. & dis. opn. of Peters, J.).) Justice Peters also concluded (*id.* at pp. 67-68 (conc. & dis. opn. of Peters, J.)), as did Justice Dooling (*id.* at pp. 68-69 (conc. & dis. opn. of Dooling, J.)), that even if prosecutorial discovery was not totally barred, it could not be ordered absent constitutional mandate or legislative authorization.

Next, in *People* v. *Pike* (1969) 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776], a majority of this court followed *Jones* in perfunctorily rejecting the defendant's claim that an order compelling prosecutorial discovery of the names, addresses, and expected testimony of defense witnesses was violative of, inter alia, the state constitutional privilege against self-incrimination. Justice Peters again dissented.

The following year, in *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], we effectively limited *Jones* to its facts (at p. 323) and expressly disapproved *Pike* (at p. 327, fn. 11).

We did so after considering, among other things, the United States Supreme Court's expanding interpretation of the privilege against self-incrimination of the Fifth Amendment, which had been held applicable to the states through the due process clause of the Fourteenth Amendment, two years after *Jones,* in *Malloy* v. *Hogan* (1964) 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489].

". . . [I]f we analyze *Jones* in the light of the policy considerations [underlying the federal constitutional privilege], it is apparent that the principal element in determining whether a particular demand for discovery should be allowed is not simply whether the information sought pertains to an 'affirmative defense,' or whether defendant intends to introduce or rely upon the evidence at trial, but whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief." (2 Cal.3d at p. 326, fn. omitted.)

We made plain, however, that prosecutorial discovery was not absolutely prohibited by the federal constitutional privilege against self-incrimination. "We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which, as in *Jones*, pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination . . . ." (2 Cal.3d at p. 327, italics in original.)

Less than three months after *Prudhomme* was decided, the United States Supreme Court's theretofore expanding interpretation of the Fifth Amendment's privilege against self-incrimination began to contract. In *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], a majority of the court—over the vigorous dissent of Justice Black—upheld a Florida rule of criminal procedure against a challenge based on the federal constitutional privilege. The rule required a defendant who intended to rely on a defense of alibi to disclose to the state the names of his alibi witnesses, and in turn required the state to disclose to the defendant the names of its rebutting witnesses. The majority found no violation of the privilege. In their view— clearly derived from the reasoning of *Jones*—"At most, the rule only compelled [defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial." (399 U.S. at p. 85 [26 L.Ed.2d at p. 452].)

In *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208], the court revisited the question of prosecutorial discovery. Oregon had a statutory notice-of-alibi rule. The rule required a defendant who intended to rely on a defense of alibi to disclose to the state both his whereabouts at the time of the offense and the names and addresses of his alibi witnesses. By contrast, it did not require any responsive disclosures to the defendant by the state. The court struck down the rule as violative of the due process clause of the Fourteenth Amendment.

"Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser. The *Williams* Court was therefore careful to note that 'Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant.' The same cannot be said of Oregon law. . . .

"We do not suggest that the Due Process Clause of its own force requires Oregon to adopt such provisions. But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." (412 U.S. at pp. 474-476 [37 L.Ed.2d at pp. 87-88], citations and fns. omitted.)

In *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], we turned yet again to the issue of prosecutorial discovery. On the People's motion, the trial court issued an order compelling discovery, to the following effect: the defendant had to give the People at least three days' notice in advance of calling any alibi witnesses, and had to disclose to them the names, addresses, and telephone numbers of such witnesses; for their part, the People had to disclose to the defendant any evidence they might possess or obtain that could impeach his alibi witnesses; failure to disclose a witness or evidence would result in exclusion. The defendant petitioned for a writ of prohibition against the trial court to restrain enforcement of the order. We directed issuance of the writ.

In an opinion for a unanimous court by Chief Justice Wright, we expressed our view that "such a procedural innovation as requiring defendants in criminal cases to give advance notice of alibis should be introduced, if at all, only upon the considered judgment of the Legislature. . . . [C]omplex

and closely balanced questions of state and federal constitutional law are presented by a notice-of-alibi order. The gravity of these questions counsels against the exercise of our rule-making power so as to promulgate a notice-of-alibi procedure." (12 Cal.3d at p. 837.)

"When the discovery order here in issue is viewed in the light of [*Jones, Prudhomme, Williams,* and *Wardius*] it is manifest that the order presents delicate and difficult questions of constitutional law, both state and federal. While *Williams* may have laid to rest the contention that notice-of-alibi procedures are inconsistent with the federally guaranteed privilege against self-incrimination, this privilege is also secured to the people of California by our state Constitution, whose construction is left to this court, informed but untrammelled by the United States Supreme Court's reading of parallel federal provisions. [Citations.] The Supreme Court did not hesitate in *Williams* to send defendants with alibi defenses down the 'two-way street' mapped out in *Jones* for a defendant making the partially analogous claim of impotence in a rape case; but this court in *Prudhomme* has itself cast doubt on the analogical utility of *Jones.* Of course, *Prudhomme*'s concern for the possible, collaterally incriminatory consequences to an accused of revealing in advance of trial the names of defense witnesses . . . was in part based on this court's reading of pre-*Williams* federal law. Nevertheless, it cannot be gainsaid that *Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires. Thus, there is no foregone answer to the question we would necessarily face were we to pass on the merits of the . . . court's order: whether notice-of-alibi discovery procedures in general are permissible under the California Constitution.

"Consideration of the merits of the . . . court's order would require us to decide not only this far-reaching issue of state law, but also whether the order is sufficiently reciprocal in scope to pass federal constitutional muster under the *Wardius* test of fundamental fairness." (12 Cal.3d at pp. 842-843, fn. omitted.)

The next year, in *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], the United States Supreme Court again addressed the issue of prosecutorial discovery. During the defendant's criminal trial in federal court, defense counsel sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator regarding statements he had previously obtained from them during interviews. Counsel called the investigator. The court told counsel he would have to submit the investigator's report to the prosecution at the close of the investigator's testimony. Counsel said he did not intend to comply. The court then ruled the investigator could not testify about the interviews. After conviction, the

Court of Appeals concluded, inter alia, that the Fifth Amendment's privilege against self-incrimination prohibited imposition of the conditional disclosure requirement. The Supreme Court held to the contrary. It reasoned that the privilege is "personal to the defendant" and as such "does not extend to the testimony or statements of third parties called as witnesses at trial." (*Id.* at p. 234 [45 L.Ed.2d at p. 151].)

The year following, in *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65], we were presented with yet another petition for a writ of prohibition to restrain a trial court from enforcing an order compelling discovery. On the day set for trial, the court ordered both the People and the defendant to disclose the names of their intended witnesses so that it could ascertain whether any of them was known to the prospective jurors. The court stated that it would not identify any of the witnesses as the People's or the defendant's, and that it would enjoin the People from contacting any of the defendant's witnesses until the witness's name was otherwise disclosed during trial. The defendant sought a writ of prohibition. We directed issuance of the writ.

In an opinion by Chief Justice Wright, we recalled at the outset that "In *Prudhomme* we concluded that the principal element in determining whether a compelled disclosure should be allowed is 'whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief.'" (18 Cal.3d at p. 524.)

Citing *Nobles* and *Williams,* we stated that we were "mindful that the trend of the federal high court's decisions on questions of compelled defense disclosure to the prosecution is not wholly consistent with our interpretation of the privilege against self-incrimination." (18 Cal.3d at p. 524.)

But we declared that "It is established that our Constitution is 'a document of independent force' [citations], 'whose construction is left to this court, informed but untrammeled [*sic*] by the United States Supreme Court's reading of parallel federal provisions. [Citations.]'

"In *Reynolds* we noted that '*Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires.' [Citation.] We maintain that solicitude and affirm the continued vitality of the stringent standards set forth in *Prudhomme* for the protection of the privilege against self-incrimination as embodied in article I, section 15." (18 Cal.3d at p. 525.)

Applying *Prudhomme,* we concluded that the discovery order in question could not stand.

Justice Richardson and Justice Clark filed separate dissenting opinions. In Justice Richardson's view, the court had "erect[ed] artificial barriers preventing two-way passage on the street" of discovery. (18 Cal.3d at p. 533 (dis. opn. of Richardson, J.).)

Next, in *People* v. *Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776], we proceeded beyond *Prudhomme* to generally disapprove of prosecutorial discovery, absent express legislative authorization, on the ground that such discovery would inevitably raise serious questions under the United States and California Constitutions, including the state charter's privilege against self-incrimination. (*Id.* at pp. 48, 49-56.) We made plain, however, that the prosecutorial discovery we deemed problematic was such as is directed at "testimonial evidence" (*id.* at p. 55, fn. 7) and not "nontestimonial evidence" (*ibid.*): "we leave intact the firmly established precedents that hold the self-incrimination privilege inapplicable to, and allow mandatory production of, nontestimonial evidence such as fingerprints, blood samples, breath samples, appearances in lineups, and handwriting and voice exemplars." (*Ibid.*)

Justice Richardson concurred in the judgment. He disagreed, however, with the court's analysis. "Today's decision entirely blocks the People's access to 'Discovery Street' by judicial fiat, leaving them without knowledge as to what constitutional principles, if any, have created the roadblock, or how the obstruction can be cleared." (30 Cal.3d at p. 69 (conc. opn. of Richardson, J.).)

Finally, in *In re Misener* (1985) 38 Cal.3d 543 [213 Cal.Rptr. 569, 698 P.2d 637], we struck down Penal Code section 1102.5 as violative of the state constitutional privilege against self-incrimination. The statutory provision required the defendant and his counsel to disclose to the People, on their request, prior statements by defense witnesses after they testified on direct examination. Its sole apparent purpose was to facilitate the impeachment of such witnesses. (38 Cal.3d at p. 554.) We construed the privilege more broadly than we had in *Prudhomme*—concluding, in effect, that it barred prosecutorial discovery that could help the People carry the entire burden of proving the defendant guilty beyond a reasonable doubt, whether the compelled disclosure might serve to make the People's case or to unmake the defendant's. (*Id.* at pp. 554-558.)

Dissenting, Justice—now Chief Justice—Lucas criticized the court's "holdings in the present case and prior cases," which he claimed "creat[ed] a devastating 'roadblock' in the search for the truth." (38 Cal.3d at p. 562 (dis. opn. of Lucas, J.).)

I now turn to the question presently before the court. When that issue is considered against the legal background set out above, the following conclusion is practically compelled: the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery, is on its face violative of a criminal defendant's state constitutional privilege against self-incrimination.

It matters not whether the privilege is construed narrowly, as in *Prudhomme*, or broadly, as in *Misener*. As noted, the former interpretation prohibits prosecutorial discovery when the compelled disclosure might conceivably lighten the People's burden of establishing their case-in-chief, whereas the latter bars such discovery when the disclosure could help the People carry the entire burden of proving the defendant guilty beyond a reasonable doubt, whether by making their case or by unmaking his.

It is clear that the intent underlying the statutory discovery scheme is to generally and broadly assist the People in obtaining the conviction of criminal defendants. It is clearer still that the effect of the scheme—indeed, its *necessary* effect—is to furnish just such assistance.

Certainly, we cannot reasonably construe the statutory discovery scheme in a such manner as to avoid conflict with the state constitutional privilege against self-incrimination.

The drafters of Proposition 115 declared in Penal Code section 1054.6 that "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information . . . which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States." By so stating, they made plain that the Constitution *of the State of California*—including its privilege against self-incrimination—was not within their consideration. We cannot overlook their meaning or ignore its effect.

It is true that in Penal Code section 1054.7 the drafters declared that a "disclosure" may be "denied, restricted, or deferred" if "good cause" is shown. But in that same provision they added: " 'Good cause' *is limited to* threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement." (Italics added.) As so limited, "good cause" is clearly not broad enough to encompass a claim under the California Constitution generally or under its privilege against self-incrimination specifically.

The question, of course, arises whether the passage of Proposition 115 affects the foregoing analysis under the state constitutional privilege against self-incrimination. As will appear, the answer is negative.

It is manifest that those who drafted Proposition 115 had a tripartite intent as to the issue under consideration.

First, the drafters had an intent as to the past, viz., to remove the alleged "roadblock" to prosecutorial discovery assertedly established by the state constitutional privilege against self-incrimination. Consider section 3 of Proposition 115, which would have added the following relevant text to section 24 of article I of the state charter: "In criminal cases the right[ ] of a defendant . . . to not be compelled to be a witness against himself or herself . . . shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States . . . ."

Plainly, the design of the drafters was not simply to breach the alleged "roadblock," as by overruling any one or more judicial decisions construing the state constitutional privilege against self-incrimination. Rather, it was to remove the alleged "roadblock" altogether, by abrogating the privilege as a guaranty independent of its federal constitutional analogue. Recall Penal Code section 1054.6, which is quoted above: "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information . . . which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States." The absence of any mention of the Constitution *of the State of California* evidences an assumption that the state constitutional privilege was, in fact, abrogated.

Second, the drafters had an intent as to the present, viz., to enact a statutory discovery scheme that would permit discovery for the People as well as for the defendant. We need look no further for proof than to section 23 of Proposition 115, which purportedly adds Penal Code sections 1054 through 1054.7.

Third, the drafters had an intent as to the future, viz., to require that henceforth all discovery must be a "two-way street" with each "lane" roughly the same width as the other. Section 5 of Proposition 115 adds section 30 to article I of the California Constitution. Subdivision (c) of the new section 30 of article I—hereafter new section 30(c)—declares, "In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." The concept of reciprocity was evidently derived from *Wardius*. The notion, as defined in its source, describes both the direction of the flow of information and material—i.e., from the People to the defendant and from the defendant to the People—and the character of the flow of such information and material—i.e., balanced.

Not only is the tripartite intent of those who drafted Proposition 115 manifest. Manifest too is the means they chose to attain what they sought.

Thus, section 3 of Proposition 115, which would have added the text quoted above to section 24 of article I of the California Constitution, would have removed the alleged "roadblock" to prosecutorial discovery assertedly established by the state constitutional privilege against self-incrimination. In the arguments they made before section 3 was invalidated in *Raven,* both the People and Izazaga impliedly recognized the point. In those arguments, neither party addressed the question whether the state constitutional privilege might have survived the passage of the measure.

Next, section 23 of Proposition 115, which purportedly adds Penal Code sections 1054 through 1054.7, would have enacted a statutory discovery scheme that would have permitted discovery for the People as well as for the defendant.

Finally, section 5 of Proposition 115, which adds new section 30(c), requires "discovery in criminal cases" to be "reciprocal in nature," i.e., flowing to the People as well as to the defendant and also balanced in character.

The discussion set out above leads to the following conclusion: the passage of Proposition 115 does not affect the determination that the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery, is on its face violative of a criminal defendant's state constitutional privilege against self-incrimination. The reason is plain. The means chosen by the drafters of the initiative measure to remove the alleged "roadblock" to prosecutorial discovery assertedly established by the privilege failed to attain what they sought. *As noted above, in Raven* we invalidated section 3 of the measure.

It might perhaps be argued that new section 30(c) itself removes the alleged "roadblock." Such an argument should be rejected out of hand. It is evidently based on an interpretation of new section 30(c) that would render it redundant in pertinent part to the text that would have been added to section 24 of article I of the state charter by section 3 of Proposition 115. An interpretation of that kind should be avoided. (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) In any event, an argument such as the preceding would be unpersuasive.

First, new section 30(c) does not remove the alleged "roadblock" expressly. In accordance with the clear meaning of its plain terms, the provision invalidates each and every statutory discovery scheme that is not

reciprocal. But it simply does not *validate* any such scheme—whether the scheme in question or any other—that happens to be reciprocal. Simply put, it does not immunize any statutory discovery scheme against attack under the California Constitution, including its privilege against self-incrimination.

Second, new section 30(c) does not remove the alleged "roadblock" by implication.

Of course, as we recently reaffirmed in *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 249-250 [279 Cal.Rptr. 325, 806 P.2d 1360], " 'the law shuns repeals by implication . . . .' [Citation.] Indeed, '[s]o strong is the presumption against implied repeals that when a new enactment conflicts with an existing provision, "[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." ' [Citation.] Thus, to avoid repeals by implication 'we are bound to harmonize . . . constitutional provisions' that are claimed to stand in conflict."

There is no conflict between the state constitutional requirement of reciprocity in discovery and the state constitutional privilege against self-incrimination. To be sure, the reciprocity requirement may be read to *permit* prosecutorial discovery. But as explained above, the privilege simply does not *prohibit* such discovery. Even as construed broadly, as in *Misener*, it allows prosecutorial discovery of at least nontestimonial evidence. It follows a fortiori that the reciprocity requirement does not amount to a revision of the entire subject covered by the privilege.[4]

---

[4]The majority attempt to avoid the presumption against repeal by implication and its patent applicability in this matter. They appear to reason that the presumption does not cover repeal by implication that is limited or pro tanto. Such, however, is not the case. (See *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization, supra*, 53 Cal.3d at pp. 249-250.)

The majority also attempt to find a conflict between the state constitutional requirement of reciprocity in discovery and the state constitutional privilege against self-incrimination. They conclude that the latter prohibits the former. But as shown, that conclusion is unsound. Certainly, the majority's assertion that the privilege, as narrowly construed in *Prudhomme*, bars prosecutorial discovery falls under its own weight. In discussing the federal constitutional privilege in *Prudhomme*, we implied that the state constitutional privilege might be implicated in a compelled disclosure that "conceivably might lighten the prosecution's burden of proving *its case in chief.*" (2 Cal.3d at p. 326, italics added.) But we also implied that the state constitutional privilege did not prohibit prosecutorial discovery: "We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which, as in *Jones*, pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination . . . ." (*Id.* at p. 327, italics in original.)

An argument, I acknowledge, can be made to the effect that new section 30(c) works a restricted change by implication. One might perhaps read the provision as intended to foster *substantial* reciprocal discovery: "*In order to provide for fair and speedy trials*, discovery in criminal cases shall be reciprocal in nature . . . ." (Italics added.) Under such a reading, the provision might be deemed to impliedly reject *Misener*'s broad construction of the state constitutional privilege against self-incrimination. But it certainly could not be held to extend further, as for example to affect *Prudhomme*'s narrow interpretation. *Prudhomme* could conceivably permit prosecutorial discovery not dissimilar to that which rules 12.1, 16, and 26.2 of the Federal Rules of Criminal Procedure (28 U.S.C.) currently allow in federal criminal proceedings. Such discovery would surely be "substantial" under any reasonable definition of the term.

I recognize that the drafters of Proposition 115 must have "intended" and "assumed" that the statutory discovery scheme would pass muster under the California Constitution. But they must have had a similar intent and assumption as to section 3 of the measure—which we struck down in *Raven*. Such an intent and assumption could not validate what was invalid there. Neither can they do so here.

In conclusion, the statutory discovery scheme, including especially Penal Code section 1054.3 permitting prosecutorial discovery, is on its face violative of a criminal defendant's state constitutional privilege against self-incrimination. As such, it is invalid. If the scheme could somehow be interpreted and given effect after Penal Code section 1054.3 had been severed—a dubious proposition, at best, in light of its comprehensive nature—it would be facially offensive to new section 30(c), which requires that "discovery in criminal cases shall be reciprocal in nature . . . ." As such, it would be invalid on that separate and independent ground.

It follows that the challenged order compelling prosecutorial discovery is without the requisite support in law: it was not issued in accordance with valid legislative authorization. It is of no consequence whether the United States or California Constitution might possibly mandate some hypothetical order compelling some undefined prosecutorial discovery in some conceivable case. This is because neither the federal nor state charter imposes any such mandate here. In any event, the challenged order—as its very words reveal—is broad and unqualified, entered as it was in response to the People's broad and unqualified motion to compel. Even under *Prudhomme*'s narrow interpretation of the state constitutional privilege against self-incrimination, it cannot stand.

## III

For all the reasons stated above, I conclude that the statutory discovery scheme purportedly added by Proposition 115 is invalid. Further, I conclude that the challenged order compelling prosecutorial discovery is unsupported as a matter of law.

I would therefore discharge the alternative writ, vacate the stay, and reverse the order of the Court of Appeal with directions to cause the issuance of a peremptory writ as prayed.

**BROUSSARD, J.**—I dissent.

Contrary to the implications in the majority opinion, the prosecutorial discovery authorized by the relevant provisions of Proposition 115 is much broader than the discovery that has been approved by any of the applicable United States Supreme Court decisions to date. Unlike the notice-of-alibi provision at issue in *Williams v. Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893] (hereafter *Williams*)—which simply required a defendant to disclose the identity of *alibi* witnesses that the defendant intended to call at trial—the discovery provisions at issue here require a defendant to disclose the identity of proposed witnesses who may testify to *any aspect of the defense case*, without regard to the potentially incriminating nature of the information the witnesses may possess or to the degree to which such disclosure might lighten the prosecution's burden in its case-in-chief. Furthermore, unlike *United States v. Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160] (hereafter *Nobles*), in which the Supreme Court upheld a court order, *issued at trial*, requiring defense counsel to disclose relevant portions of statements made to a defense investigator *if the investigator testified with regard to such statements at trial* , the provisions of Proposition 115 require disclosure of such statements *pretrial*, at a time when defense counsel cannot yet know whether counsel will in fact have to call such witnesses and when it will be impossible to limit the disclosure to those portions of the witnesses' statements that relate to their actual testimony at trial. Although the majority hold that the *Williams* and *Nobles* decisions demonstrate that the discovery sanctioned by Proposition 115 is compatible with the Fifth and Sixth Amendments of the federal Constitution, I cannot agree.

## I.

The majority read *Williams, supra,* 399 U.S. 78, as standing for the broad proposition that no discovery provision that requires a defendant to disclose to the prosecution the identity of any or all witnesses that the defendant intends to call at trial can ever violate the Fifth Amendment privilege against

self-incrimination because such disclosure is not a "compelled" disclosure within the meaning of the Fifth Amendment. Relying on a passage in *Williams* in which the court stated that the notice-of-alibi rule at issue in that case "only compelled [the defendant] *to accelerate the timing* of his disclosure, forcing him to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial" (399 U.S. at p. 85 [26 L.Ed.2d at p. 452], italics added), the majority reason that insofar as pretrial discovery pertains to witnesses or evidence that the defendant plans to disclose at trial, a "required acceleration" of the timing of the defendant's disclosure never impinges on the defendant's Fifth Amendment rights, apparently without regard to the potentially incriminatory nature of the disclosure.

But the United States Supreme Court's subsequent decision in *Brooks* v. *Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891] (hereafter *Brooks*), decided only two years after the *Williams* decision, demonstrates, in my view, that the majority's broad reading of *Williams* cannot be sustained. In *Brooks*, the court addressed the constitutionality of a state rule of criminal procedure that provided that if a criminal defendant was to testify in his or her own behalf, he or she was required to testify before any other defense witness testified. Defending the rule as a permissible means of furthering a legitimate state interest in preventing a defendant from tailoring his or her testimony to fit the testimony of other defense witnesses, the state argued that the rule did not "compel" the defendant to disclose any information that the defendant did not voluntarily choose to disclose, but at most provided for an "acceleration" of such disclosure by requiring the defendant to testify first or not at all. The Supreme Court squarely rejected that line of reasoning, explaining: "Pressuring the defendant to take the stand, by foreclosing later testimony if he refuses, is not a constitutionally permissible means of ensuring his honesty. It fails to take into account the very real and legitimate concerns that might motivate a defendant to exercise his right of silence. And it may compel even a wholly truthful defendant, who might otherwise decline to testify for legitimate reasons, to subject himself to impeachment and cross-examination *at a time when the strength of his other evidence is not yet clear.* For these reasons we hold that [the state rule] violates an accused's constitutional right to remain silent insofar as it requires him to testify first for the defense or not at all." (406 U.S. at pp. 611-612 [32 L.Ed.2d 363], italics added.)

In my view, *Brooks, supra,* 406 U.S. 605, establishes that in some circumstances a rule which requires a defendant to "accelerate" the disclosure of witnesses or evidence that he *may* disclose at trial *can* impinge on the defendant's Fifth Amendment rights, and that, contrary to the majority's conclusion, a more sensitive analysis of both the purpose of the state law and

the effect of the acceleration on the defendant's rights is needed to determine the validity of the state practice.

Further, contrary to the majority's assertion (see maj. opn., *ante,* at pp. 366-367), the high court has found Fifth Amendment violations even when the state has not technically "compelled" a defendant to produce testimonial disclosures. In *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], the high court observed that comment on a defendant's failure to testify "is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." (*Id.* at p. 614 [14 L.Ed.2d at pp. 109-110].) The court found that "cutting down" the privilege, regardless of compulsion, constituted a Fifth Amendment violation. Similarly, in *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967] the high court explicitly rejected the argument that a criminal defendant's testimony at a suppression hearing was not "compelled" and therefore could be used against the defendant in the prosecution's case-in-chief. "Those courts which have allowed the admission of testimony given to establish standing [to object to the admission of incriminating evidence] have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. *As an abstract matter, this may well be true.*" (*Id.* at p. 393 [19 L.Ed.2d at pp. 1258-1259], italics added, fn. omitted.) The absence of "compulsion" notwithstanding, the high court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." (*Id.* at p. 394 [19 L.Ed.2d at p. 1259].)

Indeed, many academic commentators who have considered the question have concluded that the broad interpretation of *Williams, supra,* 399 U.S. 78, adopted by the majority, conflicts with the high court's analysis in *Brooks, supra,* 406 U.S. 605, *Griffin* v. *California, supra,* 380 U.S. 609, or *Simmons* v. *United States, supra,* 390 U.S. 377. (See, e.g., Mosteller, *Discovery Against the Defense: Tilting the Adversarial Balance* (1986) 74 Cal.L.Rev. 1569 (hereafter Mosteller); Westen, *Order of Proof: An Accused's Right to Control the Timing and Sequence of Evidence in His De fense* (1978) 66 Cal.L.Rev. 935, 947-952; Lapides, *Cross-Currents in Prosecutorial Discovery: A Defense Counsel's Viewpoint* (1972) 7 U.S.F. L.Rev. 217, 227-228.) Professors LaFave and Israel, in their leading criminal procedure textbook, note that *Williams* has been harmonized with the Supreme Court's other self-incrimination precedents by recognizing the generally nonincriminatory nature of the disclosure upheld in *Williams*: "*Williams* itself did not involve a situation in which the defendant even remotely suggested that his alibi witness might furnish the state with incriminating information relating to another offense.

Neither was there any suggestion that the alibi witness there had helped the prosecution in building his case-in-chief. Alibi witnesses, by the very nature of the defense they support, are not furnishing information that relates directly to the government's proof of the elements of the crime. Moreover, the *Williams* Court noted that the prosecution there had confined its use of the deposition of the alibi witness to challenging the credibility of that witness." (2 LaFave & Israel, Criminal Procedure (1984) § 19.4, p. 516.)

In *Estelle* v. *Smith* (1981) 451 U.S. 454, 462 [68 L.Ed.2d 359, 368, 101 S.Ct. 1866], the Supreme Court concisely captured one of the fundamental policies reflected in the Fifth Amendment's privilege against self-incrimination: "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and punish an individual produce the evidence against him *by the independent labor of its officers,* not by the simple, cruel expedient of forcing it from his own lips.' " (Italics omitted and added, citation omitted.) Like Lafave and Israel, other commentators suggest that this basic principle is, in practice, rarely violated by a notice-of-alibi statute: "Pretrial disclosure of the alibi defense is unlikely to supply the government with new leads, because if the alibi is true, an alibi witness would be unable to connect the defendant with the crime in any way. If the alibi is fabricated, it is unlikely that a witness who is willing to perjure himself for the defendant will reveal any incriminating evidence to the prosecution." (Note, *Proposed Rule 12.3: Prosecutorial Discovery and the Defense of Federal Authority* (1986) 72 Va.L.Rev. 1299, 1312, fn. omitted; see also Mosteller, *supra,* 74 Cal.L.Rev. at pp. 1628-1631.)

The relative safety involved in disclosing an alibi defense to be used at trial stands in stark contrast to other forms of pretrial witness disclosure that will necessarily include the admission of incriminating evidence. For instance, a defendant, who anticipates calling a witness who will testify that the defendant committed a killing in self-defense, is faced with the choice of either providing the state with perhaps the sole witness to the killing or forgoing use of the witness if the defendant instead chooses to test the state's ability to prove the defendant's guilt beyond a reasonable doubt. It is not sufficient to assert that compelling a defendant to provide such a witness furthers the courts' truth-finding mission; *Estelle* v. *Smith, supra,* 451 U.S. 454, is absolutely clear in its insistence that it is the state's sole responsibility to establish the case against a defendant without requiring that defendant's complicity.[1]

---

[1]Indeed, in *Taylor* v. *Illinois* (1988) 484 U.S. 400, 415 [98 L.Ed.2d 798, 814, 108 S.Ct. 646], at footnote 20, the high court has acknowledged that in certain instances a defendant may refuse to disclose witnesses: "There may be cases in which a defendant has legitimate

Thus, I disagree with the majority's conclusion that *Williams, supra,* 399 U.S. 78, is sufficient, in itself, to demonstrate that the discovery provisions of Proposition 115 do not violate the Fifth Amendment. Insofar as Proposition 115 purports to go beyond the alibi-witness context, and to require a defendant to disclose all of the witnesses or evidence that he intends to introduce at trial, I would hold that the required "accelerated disclosure" is unconstitutional under the general Fifth Amendment principles reflected in *Brooks, supra,* 406 U.S. 605, and *Estelle* v. *Smith, supra,* 451 U.S. 454.

II.

Although, for reasons well expressed by Justice Black (see *Williams, supra,* 399 U.S. at pp. 106-116 [26 L.Ed.2d at pp. 479-485] (dis. opn. by Black, J.)) and Justice Peters (see *Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 62-68 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213] (dis. opn. by Peters, J.)), I find it hard to accept the proposition that a discovery order which compels a defense attorney or defense investigator to turn over investigative material to the prosecution does not raise Fifth Amendment problems, recent Supreme Court decisions do hold, as the majority note, that the Fifth Amendment only applies to the compelled disclosure of testimonial material from the defendant himself, rather than to the compelled disclosure of evidence that was obtained by his attorney or investigator from other sources. (See, e.g., *Nobles, supra,* 422 U.S. at pp. 233-234 [45 L.Ed.2d at pp. 150-151].) Under those cases, the majority are correct in finding no *Fifth Amendment* obstacle to the portion of Proposition 115's discovery provisions which require defense counsel to disclose the contents of written statements in counsel's possession of witnesses counsel intends to call at trial.

But while, under the recent Supreme Court authority, the compelled disclosure of such investigative material may raise no Fifth Amendment concerns, such disclosure, in my view, raises very serious questions with regard to the defendant's right to the effective assistance of counsel guaranteed by the Sixth Amendment.

With respect to the Sixth Amendment issue, the majority "perceives" that "there is nothing in the new discovery chapter that would penalize exhaustive investigation or otherwise chill trial preparation of defense counsel such that criminal defendants would be denied the right to effective assistance of counsel under the Sixth Amendment." (Maj. opn., *ante,* at p. 379.) They

objections to disclosing the identity of a potential witness." Though Penal Code section 1054.7 makes provisions for defendants to refuse to disclose information where "good cause is shown why a disclosure should be denied, restricted or deferred," the majority's analysis forecloses the possibility that *any* evidence the defendant "intends to use at trial" can be withheld from production.

reach that conclusion in part because the United States Supreme Court "has never struck down a discovery scheme as violative of the right to effective assistance of counsel" and in part because they find support for their holding in the high court's decision in *Nobles, supra,* 422 U.S. 225. Of course, the fact that the high court has not struck down a discovery statute on Sixth Amendment grounds, if true, says nothing about the constitutionality of Penal Code section 1054 et seq. under the Sixth Amendment. Further, I find little support in *Nobles* for the majority's assertions. Indeed, a close reading of *Nobles* actually suggests that Proposition 115's discovery provisions run afoul of the Sixth Amendment guaranty of effective assistance of counsel.

In *Nobles, supra,* 422 U.S. 225, the defendant's principal contention was that the trial court had violated the work product doctrine by ruling that if the defense called a defense investigator to testify to the contents of pretrial interviews the investigator had with two prosecution witnesses, the defense would be required to disclose to the prosecution relevant portions of the investigator's written notes of the interviews. In analyzing this contention, the *Nobles* court recognized the general importance of protecting the investigative efforts of defense counsel and defense investigators in criminal cases. The court stated in this regard: "Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. *The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.* [¶] At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." (422 U.S. at pp. 238-239 [45 L.Ed.2d 153-154], italics added, fns. omitted.)

After noting the applicability and importance of these concerns in criminal cases generally, however, the *Nobles* court ultimately concluded that in the case before it the defendant "by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony." (422 U.S. at p. 239 [45 L.Ed.2d at p. 154], fn. omitted.) Thus, on those facts, the court held that the trial court had not erred in its "limited" ruling, "opening to prosecution scrutiny only the portion of the report that related to

the testimony the investigator would offer to discredit the witnesses' identification testimony." (*Id.* at p. 240 [45 L.Ed.2d at p. 155].)

Although the main focus of the *Nobles* decision related to the work product doctrine, the defendant had also challenged the trial court's ruling as a violation of the Sixth Amendment, and the *Nobles* court addressed that claim in a footnote. The court stated: "This claim is predicated upon the assumption that disclosure of a defense investigator's notes in this and similar cases will compromise counsel's ability to investigate and prepare the defense case thoroughly. Respondent maintains that even the limited disclosure required in this case will impair the relationship of trust and confidence between client and attorney and will inhibit other members of the 'defense team' from gathering information essential to the effective preparation of the case." (*Nobles, supra,* 422 U.S. at p. 240, fn 15 [45 L.Ed.2d at p. 154].) The court rejected the defendant's argument, not because it perceived any misstatement of Sixth Amendment principles on the defendant's part, but because "the [trial court's] disclosure order resulted from respondent's voluntary election to make testimonial use of his investigator's report. Moreover, apart from this waiver, we think that the concern voiced by respondent fails to recognize the limited and conditional nature of the court's order." (*Ibid.* [45 L.Ed.2d at pp.154-155].)

It is apparent from the high court's treatment of the defendant's Sixth Amendment contention that it treated his concerns seriously. The majority does not even attempt to sketch out the Sixth Amendment limitations to requiring pretrial disclosure of defense evidence, but instead determines that the language of *Nobles, supra,* 422 U.S. 225—in approving the limited and conditional order of the trial court in that case—specifically approves of the discovery provided in Proposition 115: "Under the new discovery chapter, discovery is *limited* to relevant statements and reports of statements of defense witnesses and *conditioned* upon the defendant's intent to call the witnesses at trial." (Maj. opn., *ante,* at p. 380, italics in original.)

It should be obvious from the facts of *Nobles, supra,* 422 U.S. 225, that the discovery authorized by the provisions of Proposition 115 is of an entirely different magnitude than the discovery permitted by the high court in *Nobles.* In *Nobles,* the statement of the defense investigator was "limited" by, and "conditioned" on, not the defendant's intent to call the investigator but by the fact that the discovery order in *Nobles* only reached "*the relevant portion* of the investigator's report," i.e., the witnesses' statements, *after the investigator had been called to testify for the defense.* (See *Nobles, supra,* 422 U.S. at pp. 228-229 [45 L.Ed.2d at pp. 147-148].) It is simply disingenuous to compare a discovery order allowing the prosecution to review *all* potential

witness statements *before trial* pursuant to Penal Code section 1054.3 with the "limited and conditional" order at issue in *Nobles.*

It is not only the facts of *Nobles, supra,* 422 U.S. 225, that resist the majority's expansive interpretation of that case; the language of the court in *Nobles* suggests that Proposition 115 cannot survive Sixth Amendment scrutiny. The *Nobles* court discussed in detail the policy considerations that apply to the protections of the Sixth Amendment no less than to the work product doctrine. Again, the court approved the trial court's order, but emphasized the defendant's waiver and the fact that the court's order was narrowly tailored to the state's particularized needs: the defendant, "by electing to present the investigator as a witness, *waived* the privilege *with respect to matters covered in [the]investigator's] testimony.*" (*Nobles, supra,* 225 U.S. at p. 239 [45 L.Ed.2d at p. 154], italics added.)

In a typical criminal prosecution, the discovery provisions of Proposition 115 will include neither a waiver nor a narrowly tailored order for the defense to produce evidence. The majority's definition of "intent to use at trial" (see maj. opn., *ante,* at p. 376, fn. 11) leaves such a strong possibility that the defense will *not* produce the evidence at trial that the defense's "intent to use at trial" is certainly not tantamount to a waiver, i.e., when the defense actually uses the evidence in question. Similarly, an order to produce all statements of a witness the defense "intends to use at trial" is in no way narrowly tailored to produce only the *relevant* portions of the statement of a witness *certain* to be called at trial.[2]

Even if we were to assume that all of a potential witness's pretrial statements were relevant to the issues that would appear before the trial court, the fact that the defense must release those statements prior to trial raises serious Sixth Amendment concerns.[3] By compelling a defense attorney to surrender the fruits of the investigation before trial, we necessarily chill an attorney's zeal to investigate potentially damaging or incriminating leads. For instance, defense investigators will hereafter be instructed not to take witnesses' statements for fear that they will be discoverable; yet without

[2]It is significant that the federal discovery rule that is analogous to that provided under Penal Code section 1054.3, amended in the wake of *Nobles, supra,* 422 U.S. 225, forbids *all* disclosure of witness statements before trial. (See Fed. Rules Crim.Proc., rule 16, 18 U.S.C.)

[3]Typically, these questions are raised and resolved pursuant to the work product doctrine; however, Proposition 115 has so limited the work product privilege that it no longer covers witness statements. (See Pen. Code, § 1054.6.) Yet the arguments that the high court advances in support of the policy underlying the work product doctrine must also be considered in evaluating a defense attorney's opportunity to fully investigate and present an effective defense on his or her client's behalf. (See generally *Nobles, supra,* 422 U.S. at pp. 236-240 [45 L.Ed.2d at pp. 152-155]; see also conc. opn. of Kennard, J., *ante,* at pp. 384-385.)

such statements, the defendant's ability to impeach a witness's testimony with a prior inconsistent statement is seriously impaired. Similarly, defense attorneys will be pressured *not* to disclose witnesses that would testify to both incriminating and exculpatory evidence (e.g., percipient witnesses that would testify to an affirmative defense), and thereby may be forced to forgo the opportunity to call such witnesses at trial. (See, e.g., *Taylor* v. *Illinois, supra,* 484 U.S. 400.) Because the discovery provisions of Proposition 115 so tie a defense attorney's hands, I conclude that the provisions impermissibly impinge on a defendant's right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

### III.

I do not believe that the cases relied upon by the majority to interpret the Fifth and Sixth Amendments of the United States Constitution, particularly *Williams, supra,* 399 U.S. 68, and *Nobles, supra,* 422 U.S. 225, authorize prosecutorial discovery to the extent provided in the trial court's order. Accordingly, I cannot join the majority.

Petitioner's application for a rehearing was denied October 24, 1991, and the opinion was modified to read as printed above. Mosk, J., was of the opinion that the application should be granted.