Filed 6/5/14  P. v. Williams CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B249425 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA372156) |
| v. | |
| CALVIN WILLLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed with directions.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

A jury convicted appellant Calvin Williams of attempted premeditated murder and shooting from a motor vehicle. Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), appellant's counsel filed an opening brief requesting that this court review the record and determine whether any arguable issues exist on appeal. We advised appellant he had 30 days within which to submit any contentions or issues he wished us to consider. On January 2, 2014, appellant filed a supplemental brief raising a single issue. Our subsequent review of the record identified a sentencing issue for which we requested supplemental briefing from counsel -- namely, whether appellant's sentence for shooting from a motor vehicle under Penal Code section 654 should have been stayed.[1] We order the abstract of judgment to be amended but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2010, at approximately 4:25 p.m., Officer Ted Lockhart of the Los Angeles Police Department had just gotten off work. Officer Lockhart was in his car around the vicinity of 85th Street and Western Avenue in Los Angeles. He saw a man, later identified as Michael Douver, walking down the street and a blue pickup truck traveling next to him very slowly down the street. Douver was on the driver's side of the truck. The truck came to a complete stop. Officer Lockhart heard approximately five or six gunshots, and Douver reacted as if he had been hit by the gun fire. The shots appeared to come from the driver's side of the truck. The truck accelerated and drove away. Douver ran in the opposite direction to a bus bench where he laid down. Officer Lockhart did not observe Douver say anything to the truck's occupants or make any aggressive gestures toward the truck. Douver did not have anything in his hands.

Officer Lockhart called the police department's inside communication line and reported the shooting. He also described the truck. Douver had a gunshot wound in the area of his right hip. As paramedics were tending to him at the scene, he told

---

[1] Further undesignated statutory references are to the Penal Code.

2

Officer Chad Butler that he was walking down 85th Street when a blue pickup truck pulled alongside of him. There were three black males in the truck. The driver produced a handgun and fired approximately four shots at him. Officer Butler collected two spent .32 caliber bullet casings at the scene. Officer Michael Stewart was also at the scene and observed gang tattoos on Douver. Officer Stewart talked to Douver's friend at the scene; his friend was a member of the Eight-Trey Gangster Crips and said Douver was also a member.

Approximately 30 minutes after the shooting, a call went out over the police radio that the suspect vehicle had been located on 108th Street. Charlotte Taylor lived at the address where the vehicle was located. She was friends with appellant's mother and aunt, and appellant was friends with her sons. Just before police officers arrived, Taylor came home from the store and found appellant standing at the front gate of her residence. She knew appellant drove a blue truck and saw his blue truck in her driveway. She had seen him next to the driver's side of the truck like he had just gotten out of it, and then he walked around the back of the truck to her gate. Appellant was with two men, John Powell and a Hispanic man she did not know, who was Christian Chan. She talked to them at the gate and all three men followed her into the house. She put her bags down and then she, her son, and Powell went outside to go to a store around the corner. Appellant did not leave the house with them. When they walked out of the house, Officer Brent Banachowski and his partner were there. They asked her who was driving the blue truck; she told them appellant. When she went back into her house, appellant had fled. The officers detained Powell and Chan.

Officers Butler and Stewart also responded to Taylor's house. Officer Stewart found a .32-caliber semiautomatic handgun in appellant's truck and a spent bullet casing on the driver's side floorboard. He also found some paperwork in the glove box with appellant's name on it, including a photo copy of a driver's license in appellant's name. The handgun was swabbed for DNA and compared with DNA swabs from appellant, Powell, and Chan. The DNA on the gun was a mixture, but there was only one major male contributor for the DNA found on the gun. Powell and

3

Chan were excluded as possible contributors. Appellant's DNA profile matched the profile of the major male contributor found on the gun. In addition, the casings Officer Butler collected at the scene were determined to have been fired from this same gun found in appellant's truck.

Chan was charged in this case with attempted murder and pleaded no contest. He testified in the prosecution's case. He said he pleaded no contest because he did not want to go to trial and be convicted for something he did not do. He was 17 years old at the time of the shooting and 19 years old at the time of trial. In June 2010, Chan and appellant were members of the same gang, Six-Seven Neighborhood Crips. Powell also belonged to this gang. According to Chan, the Eight-Trey Gangster Crips were enemies of the Six-Seven Neighborhood Crips. Chan handwrote a statement after his arrest describing the following facts. Appellant and Powell picked him up on June 1, 2010 in a blue truck, and appellant was driving. Appellant was "talking smack" and seemed mad about something. As they were driving down Western Avenue, Chan noticed a man on the sidewalk looking inside the truck. Appellant took a gun out from the center console and started shooting at the man.

At trial, Chan testified his written statement was not true and he simply wrote what the officers told him to write. He wrote the false statement because one of the investigating officers was threatening to pin a robbery on his mother, and he wanted to protect her. He also decided to write the statement because he was willing to do whatever it took not to spend the rest of his life in jail. At the same time, he did not want to be labeled a snitch and was scared for his own safety. The prosecution played a videotaped interview of Chan in which he told the officer the same story he recorded in his written statement. Toward the end of the interview, Chan was recorded voluntarily writing out his statement with no coercion from officers.

Officer Stewart was the prosecution's gang expert. One of the long-time rivals of the Six-Seven Neighborhood Crips was the Eight-Trey Gangster Crips. The area of 85th Street and Western Avenue was the territory of Eight-Trey Gangster Crips. Officer Stewart testified about gang culture. Gangs maintain control in their territories

4

through violence, fear, and intimidation. Among the primary activities of the Six-Seven Neighborhood Crips were assault with a deadly weapon and attempted murder. If a gang member shot a rival gang member or someone in a rival's territory, the shooter's status within his gang community would rise. The status of the whole gang would rise because a shooting demonstrates strength and creates fear in other gangs.

Officer Stewart had approximately four prior contacts with appellant. On one occasion, appellant admitted to being a member of the Six-Seven Neighborhood Crips. There were also twelve field identification cards filled out by other officers documenting instances in which appellant had admitted to being a member of Six-Seven Neighborhood Crips. According to Officer Stewart, appellant was well known among the officers in the gang enforcement detail.

Appellant was charged with attempted premeditated murder of Douver (§§ 187, subd. (a), 664, subd. (a)) and shooting from a motor vehicle at Douver (§ 26100, subd. (c)).[2] The information also contained firearm and gang allegations. (§§ 186.22, subd. (b)(1), 12022.53, subds. (b)-(e).) The jury found him guilty as charged on both counts. The jury also found the gang allegations to be true on both counts, and on the attempted murder count, the jury found it true that a principal personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (d) and (e)(1).

Appellant made a *Marsden*[3] motion right before trial commenced, which the court denied. He also filed a motion for new trial arguing he received ineffective assistance of counsel at trial. The court appointed new counsel to represent him for purposes of investigating and filing the new trial motion. The court determined

---

[2]   At the time appellant was charged, the crime of shooting from a motor vehicle was codified in section 12034. Section 26100 continues former section 12034 without substantive change. (38 Cal. Law Revision Com. Rep. (2009) p. 553.)

[3]   *People v. Marsden* (1970) 2 Cal.3d 118.

appellant did not receive ineffective assistance of counsel and denied the new trial motion.

On the attempted murder count, the court imposed a sentence of life with the possibility of parole, plus a consecutive term of 25 years to life for the firearm allegation, and another ten years for the gang allegation. The court stayed the ten years on the gang allegation. On the shooting from a motor vehicle count, the court sentenced him to a term of five years in state prison, plus an additional ten years on the gang allegation, which the court again stayed. The court also awarded appellant 976 days of actual credit and another 146 days of conduct credit and imposed fines and fees.

## DISCUSSION

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) When the evidences shows the defendant acted with only one intent or objective, the "[i]mposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment. [Citations.] [T]he imposition of concurrent terms is treated as an implied finding that the defendant bore multiple intents or objectives, that is, as a rejection of the applicability of section 654." (*People v. Alford, supra*, 180 Cal.App.4th at p. 1468.) Instead, in a single objective case, the trial court should impose a sentence on each count, but stay the execution of sentence as necessary to comply with section 654. (*Ibid.*)

Appellant contends the court erred when it failed to stay his sentence on count II for shooting from a motor vehicle because both counts in this case were based on a

6

single objective -- shooting at Douver.  Respondent acknowledges appellant acted pursuant to a single objective but asserts this is a case of clerical error and not court error.  That is, the court's oral pronouncement stayed appellant's sentence on count II, but the abstract of judgment failed to properly reflect the oral pronouncement.  Both the minute order of the sentencing hearing and the abstract of judgment show the court stayed the gang enhancement but ordered the sentence on the substantive offense to run concurrently.  Both parties agree, as do we, that the abstract of judgment should be corrected to stay the sentence for the substantive offense.

Having examined the entire record as well as appellant's contention in his January 2, 2014 supplemental brief, we conclude no other arguable issues exist and appellant's counsel has fully satisfied her responsibilities under *Wende*.  (*Smith v. Robbins* (2000) 528 U.S. 259, 279-284; *Wende*, *supra*, 25 Cal.3d at p. 441; see also *People v. Kelly*, *supra*, 40 Cal.4th at pp. 123-124.)  Appellant's contention has no merit.  He argues Chan's *Miranda*[4] rights were violated and Chan's statements to officers were improperly admitted because Chan was a minor and the officers did not seek parental consent to speak to him.  Appellant cites *In re Abdul Y.* (1982) 130 Cal.App.3d 847 (*Abdul Y.*).  *Abdul Y.* explained the "use in a juvenile proceeding of a confession obtained without an intelligent, knowledgeable waiver of constitutional rights violates the Fifth Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution," and "failure to seek and obtain adult consent is but one of several factors to be considered by the trial judge in determining the admissibility of a confession." (*Id*. at pp. 862, 863.)  Appellant cannot invoke Chan's Fifth Amendment privilege, however.  "[T]he privilege against self-incrimination "'is a *personal* privilege:  it adheres basically to the person, not to information that may incriminate him.'" . . .  [¶]  . . .  '[T]he Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does

---

**4**     *Miranda v. Arizona* (1966) 384 U.S. 436.

7

not extend to the testimony or statements of third parties called as witnesses at trial." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 368, quoting *U.S. v. Nobles* (1975) 422 U.S. 225, 233, 234.)

## DISPOSITION

The trial court is directed to prepare an amended abstract of judgment that stays appellant's sentence on count II under section 654.  The court shall forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.